109 N.J. Super. 462 (1970)
263 A.2d 796
JULIA GREEN, INDIVIDUALLY AND AS THE NATURAL PARENT AND NEXT FRIEND OF CLARENCE BARNES, HARRY BARNES, CYNTHIA BARNES, VALERIE BARNES AND STASHIA LEE, INFANTS, PLAINTIFFS-APPELLANTS,
v.
DEPARTMENT OF INSTITUTIONS AND AGENCIES, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 1, 1969.
Decided April 6, 1970.
*463 Before Judges GOLDMANN, LEWIS and MATTHEWS.
*464 Mr. William C. Levine argued the cause for appellants (Mr. David H. Dugan, III, Director, Camden Regional Legal Services, Inc., attorney; Mr. Leonard H. Wallach, Assistant Director, of counsel).
Mr. Eugene T. Urbaniak, Deputy Attorney General, argued the cause for respondent (Mr. Arthur J. Sills, Attorney General, attorney).
The opinion of the court was delivered by GOLDMANN, P.J.A.D.
Plaintiffs appeal from a determination of the Department of Institutions and Agencies which affirmed the decision of the Gloucester County Welfare Board that plaintiffs were no longer eligible for benefits under the New Jersey Assistance for Dependent Children (ADC) Program. Although the appeal was filed after the running of the 45-day period fixed by R.R. 1:3-1(b), now R. 2:4-1(b), without any extension of time being sought or obtained, we proceed to deal with the matter on the merits.
Plaintiff Julia Green lives in a family household consisting of herself, her present husband Edward Green, and nine children. She is the mother of all nine. Green is the natural father of the four youngest children; the other five are his stepchildren. The father of three of the stepchildren has been declared legally dead, and the father of the other two, who is under a court order of support, has disappeared and complaints have been filed against him.
Mrs. Green has been receiving ADC benefits from the Gloucester County Welfare Board since 1960, and received assistance from the former State Board of Child Welfare for more than six years prior thereto.
The Greens were ceremonially married in August 1967, at which time Mrs. Green was receiving for herself and her five children the sum of $408 monthly ADC benefits. When she and the children moved into her husband's home, her case was rebudgeted by the county welfare board, resulting in a reduction from $408 to $80 a month for the month of *465 October 1967. The grant was increased to $99, effective November 1, 1967, when a rebudgeting error was discovered and corrected. Mrs. Green appealed from that determination, requesting a fair hearing before the Department of Institutions and Agencies. That hearing was held on November 17, 1967 and resulted in a determination by the Department, issued February 15, 1968, sustaining the county welfare board's decision. The following was developed at the hearing.
Green is a regularly employed truckdriver who has been on his present job for about ten years. He refused to disclose to the county welfare board details pertaining to his income and his alleged special circumstances or debts on the grounds that this was his personal business and he was not legally obligated to support the five stepchildren. He declared himself willing to provide full support for his wife and their three children (a fourth was born shortly after the hearing) and also shelter for the stepchildren in the home he owned. He told the board that he would support the stepchildren, even though not legally obliged to do so, if he could afford it; however, he would not provide specific information regarding his own obligations, special requirements, income or other resources. Unable to obtain that information, the county welfare board estimated his net take-home pay, based on the hourly wage rate for his fellow drivers, using a 40-hour work week; deducted certain allowable items, and then determined that the family was entitled to an ADC grant of $99 to meet the family requirements.
On September 18, 1968 the county welfare board wrote Mrs. Green advising her that at a meeting held the day before the board had determined she was no longer eligible for assistance "because need cannot be determined because Mr. Green will not supply any financial information about the family. Also, the income is greater than need." She was advised that she could reapply for aid whenever she believed her circumstances had changed with respect to the *466 stated cause for closing the case. Plaintiff brought no further information to the attention of the board; instead, on December 9 her attorney, connected with the Camden County Legal Services, Inc., wrote the Department requesting another fair hearing. The request was granted and a second hearing held on January 23, 1969. At that time it was determined that Green was employed by a Glassboro trucking company full-time and that he had consistently refused to give any information with regard to his income or expenses, or to permit the welfare board to verify his wages through his employer. Mrs. Green professed total ignorance of any facts relating to her husband's financial circumstances. She asserted that he objected to providing food for his stepchildren and refused to furnish them with clothing, medical care and other necessities.
In an effort to develop data that would be relevant to a correct detemination of the family's eligibility for public assistance, the welfare board was informed by Green's employer that the average wages of its truckdrivers was $250 a week. Using this figure as a basis, and deducting allowable expenses, the board arrived at a budgetable income figure which exceeded the family's requirements by some $460.
The hearing officer found that Mrs. Green "had persistently failed or refused to respond substantively or credibly to any questions about her involvement in or relationship to the management of the financial and budgetary affairs of the household." Further, "her posture of total and complete ignorance about any element of the household finances was so exaggerated as to compel disbelief" on his part.
Counsel for Mrs. Green at the second fair hearing argued that (1) her husband had no legal responsibility under New Jersey law to support his stepchildren; (2) under the New Jersey Categorical Assistance Budget Manual Regulations, § 502, only available resources could be considered as income, and since the husband's income was not available, it should not be considered in computing Mrs. Green's *467 budget, and (3) under a recent federal regulation, assumed income from nonlegally responsible persons could not be considered in determining need for public assistance. (The reference here was undoubtedly to 45 C.F.R., § 203.1, issued in the wake of the decision in King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968)).
The Department of Institutions and Agencies, in its determination filed March 24, 1969 following the hearing, called attention to the Department's Manual of Administration, § 2123.2, entitled "General Policy":
The client must understand, however, that it is the C W B [county welfare board] which is responsible for determining whether he is or is not eligible. If he is unwilling to have the necessary inquiries made and is unable or unwilling to secure the required information from such sources himself, then it shall be explained to him that C W B will be unable to make an affirmative determination. In this situation, unless he wishes to withdraw his application he must expect that it will be denied by C W B.
The Department recognized that although Green was not technically a client, he was the evident and indeed acknowledged head of the family unit requesting public assistance and professing to be in need of such assistance. The regulation was therefore construed as applicable in the case under consideration. This was a correct conclusion, for section 2101.2(c) of the Manual of Administration provides that where the natural mother and stepfather both live in the home, the term "applicant" means both of them, and both must execute the formal written application unless physically or mentally unable to do so. Section 2113.4 contains the same requirement.
The Department, in its determination, said that there could be no doubt that section 2123.2, just quoted, had direct and specific application to Mrs. Green, who had been a client and who now sought to be recertified as continuing to be eligible for payments of supplementary public assistance. Noting that in the opinion of the hearing officer Mrs. Green had exhibited at the hearing "a studied unwillingness *468 to provide or secure requested information" within the meaning and intent of the regulation, the Department held that
* * * in a family household in which there are children who are offspring of one but not both parents, and who have been voluntarily established in and accepted by such parents as members of the household, the single-parentage status of such children does not ipso facto create a presumption that the household is financially needy, nor does it create a conclusive presumption that such children are suffering deprivation and thereby automatically eligible for public assistance.
The Department therefore held that under our statutes and the regulations issued pursuant thereto, the existence of deprivation and the consequent need for public assistance must be affirmatively demonstrated by persuasive proof. The burden of adducing such proof falls upon the applicant for assistance, and the existence of deprivation is not to be assumed. Accordingly, the welfare board decision under challenge was affirmed.
Plaintiff's arguments on this appeal are an elaboration of those advanced at the second fair hearing. Essentially, she contends that a stepfather is not required under New Jersey law to support his stepchildren; that under the doctrine of federal supremacy, a state law or regulation may not contravene federal law or regulations dealing with the same subject, and where a stepfather has refused to support his stepchildren, any denial of assistance to them on the basis of his "assumed income" is a denial of his and their constitutional right to equal protection of the law and a taking of his property without due process of law. These arguments do not come to grips with the real issue in the case.
New Jersey, of course, still adheres to the rather unenlightened policy of not requiring the stepfather to support his stepchildren. Tartaglio v. Department of Institutions and Agencies, 102 N.J. Super. 592, 594 (App. Div. 1968), app. dism. and certif. den. January 1969 (unreported), *469 cert. den. 394 U.S. 1000, 89 S.Ct. 1594, 22 L.Ed.2d 778 (1969). The Department concedes that it is not within its power or the power of the county welfare board to impose such a legal obligation on the stepfather.
42 U.S.C.A., § 602(a)(7) provides that a state plan for aid and services to needy families with children must, in order to be approved, fulfill certain conditions, among them, that the plan "provide that the State agency shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid * * *." 42 U.S.C.A., § 606, contains the following definitions:
(a) the term "dependent child" means a needy child (1) who has been deprived of parental support or care and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather * * * in a place of residence maintained by one or more of such relatives as his or their own home, and (2) who is (A) under the age of 18 or (B) under the age of 21 and a student * * *.

* * * * * * * *
(c) the term "relative with whom any dependent child is living" means the individual who is one of the relatives specified in sub-section (a) of this section and with whom such child is living * * * in a place of residence maintained by such individual * * * as his * * * own home.
The New Jersey statutes governing the ADC Program are contained in N.J.S.A. 44:10-1 et seq. The "Definitions" section, N.J.S.A. 44:10-1(c) and (d), is almost identical with the definitions of the federal statute.
The state regulations implementing the State ADC Program do not require a stepfather to support his stepchildren, except on a voluntary basis. They do, however, require that he and his wife openly and honestly make available to the county welfare board the facts of their budget, and this to the end that the board may fairly determine if he is actually giving voluntary support to the stepchildren.
Since the Department clearly understands that it cannot require a stepfather to support his stepchildren, all the *470 constitutional arguments addressed to that nonexistent issue are academic.
Nor does the Department maintain that a county welfare board may "assume" that the stepfather makes his income available to his stepchildren. Federal regulation 45 C.F.R., § 203.1, forbids such approach. That regulation reads:
The inclusion in the family, or the presence in the home, of a "substitute parent" or "man-in-the-house" or any individual other than one described in paragraph (a) of this section [a natural or adoptive parent or stepparent, who is legally obligated to support the child under state law of general applicability] is not an acceptable basis for a finding of ineligibility or for assuming the availability of income by the State. * * * [I]n the consideration of all income and resources in establishing financial eligibility and the amount of the assistance payment, only such net income as is actually available for current use on a regular basis will be considered, and the income only of the parent described in paragraph (a) of this section will be considered available for children in the household in absence of proof of actual contributions.
See Solman v. Shapiro, 300 F. Supp. 409 (D. Conn. 1969), aff'd p.c. sub nom. Shapiro v. Solman, 396 U.S. 5, 90 S.Ct. 25, 24 L.Ed.2d 5 (1969), on the basis of King v Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), the case which resulted in the adoption of the federal regulation just quoted.
The Department has issued state regulations in accordance with 45 C.F.R., § 203.1. For example, the New Jersey Categorical Assistance Budget Manual, § 502, provides, "Only available resources shall affect the amount of the grant." The matter is more specifically covered by Circular Letter 325, issued by the Department on June 1, 1967. The subject of that letter was the federal requirements with regard to policy on "assumed income." The attention of county welfare directors was called to the provision found in the Handbook issued by the Bureau of Family Services, Department of Health, Education and Welfare, regarding availability of income and resources, which directed that "a *471 State must differentiate between resources that can be counted on because they are available for current use on a regular basis and those found not to be available for the individual's use in meeting subsistence needs as defined in the State's standard." Thus, "income must not be considered where it is not, in fact, currently available to the needy individual * * *."
We find that our state laws and regulations do not contravene the federal law and regulations, but are in harmony and evince a cooperative effort to make assistance available for needy children, whose need is to be determined by taking into account all actual contributions to the household by its members, including those made by the stepparent.
The real issue in this case is the refusal on the part of Mrs. Green and her husband to furnish the county welfare board, or to let the board seek, verifying information to determine if the family and the stepchildren are actually in need. Under both the federal and our own laws and regulations, if a welfare applicant is unwilling to have the welfare agency seek verifying information concerning eligibility, and eligibility cannot be determined, then assistance is denied or terminated. Such is the specific provision found in Part IV of the Federal Handbook of Public Assistance Administration, § 2300(e)(5):
When available information from the applicant or recipient is inconclusive and does not support a decision of eligibility, the agency explains to the individual what questions remain and how he can resolve or help to resolve them, what actions the agency can take to resolve them, and the necessity of resolving the questions if eligibility is to be established or continued. If the individual is unwilling to have the agency seek verifying information, the agency, unable to determine that eligibility exists, denies or terminates assistance. * * *
Section 2123.2 of the New Jersey Manual of Administration, quoted earlier in this opinion, is to the same effect.
*472 The action taken by the welfare board, stripped of all extraneous considerations, was fundamentally based on its lack of information concerning the needs of the stepchildren. The board got no help whatever from Mrs. Green. She, and not her husband, said he would not support the stepchildren, except to give them shelter. Like the welfare board and the Department, we find completely incredible her avowed ignorance of anything relating to the financial and budgetary affairs of the household.
Plaintiff's position seems to be that a stepchild living with its mother and stepfather is automatically entitled to ADC benefits without regard to the stepfather's contributions to the household and whether the child is actually in need. Further, that her mere assertion that the stepfather will not support the stepchildren thereby ends the welfare board's duty to investigate the facts and make a factual determination of need. In short, she would appear to claim that applicants for welfare do not carry the burden of showing that the stepchildren are eligible for assistance, but that the welfare board must somehow establish that they are not in need, and this in the face of the stubborn noncooperation of those who have the needed information.
The funds available for assistance to dependent children flow into the 21 county welfare boards of our State from three sources  federal, state and county. Those funds are impressed with a public trust, and each board is charged with disbursing them in compliance with the standards, rules and regulations established by the Department of Institutions and Agencies pursuant to federal and state law.
The position taken by plaintiff is in clear violation of the controls that have been adopted to safeguard the ADC Program. To accept that position by allowing her to claim absolute ignorance of her family's financial and budgetary situation would be to invite a deliberate suppression of the true family condition. It would be an invitation to an impermissible invasion of public funds.
*473 A family with a demonstrated need for aid to its children is certainly entitled to every consideration in receiving welfare assistance. However, one who seeks ADC benefits must demonstrate such need and give the fullest cooperation to welfare officials so that there may be a proper assessment of just how much assistance is required.
Mrs. Green has been less than frank and less than fair in dealing with the Gloucester County Welfare Board. It may be that her many years of receiving aid for her children has led to the belief that ADC benefits may never be reduced or terminated, whatever the change in circumstances. She can demonstrate her good faith and proper understanding of the ADC Program by giving the county welfare board all the facts relating to the family finances and needs. If she does not do so, the board and the Department are entirely justified under both the federal and state laws and regulations in refusing further aid.
The Department determination is affirmed.