MR. X and Mrs. X, his wife et al.

v.

Lloyd W. McCORKLE, Commissioner of the State Department of Institutions and Agencies, et al.

Carolyn AMOS, individually and on behalf of her two infant children, etc.

v.

Irving ENGELMAN, Director of the Division of Public Welfare of the New Jersey Department of Institutions and Agencies, et al.

Civ. A. Nos. 1242–69, 1349–69.

United States District Court, D. New Jersey.

July 6, 1970.

Monmouth Legal Services Organization, Red Bank, for Mr. & Mrs. X.

Middlesex County Legal Services Corp., New Brunswick, for S. Jackson.

Bergen Cty. Legal Services Assurance Corp., Hackensack, for Y. Bailey.

Arthur J. Sills, Newark, (McCorkle, Engelman, Sills) Pierce H. Deamer, Jr., Bergen Cty. Welfare Board Bergenfield, (N.J.) for defendants.

Before ADAMS, Circuit Judge, AUGELLI, Chief District Judge, and WORTENDYKE, District Judge.

## OPINION AND ORDER

ADAMS, Circuit Judge.

Plaintiffs [1] in both these class actions seek to invalidate New Jersey's "Administrative Ceiling" regulations of the Aid to Families with Dependent Children (AFDC) program of that state. Section 615 of the Categorical Assistance Budget Manual. They allege such regulations violate the Equal Protection and Due Process Clauses of the Fourteenth Amendment, contravene sections 402(a) (7), 402(a) (8) and 406(b) of the Social Security Act of 1935, 42 U.S.C. § 602(a) (7), 42 U.S.C. § 602(a) (8), 42 U.S.C. § 606(b), as amended, and conflict with certain HEW regulations promulgated thereunder.[2]

Plaintiffs represent a class of persons who would be entitled to receive some welfare benefits or increased money payments under New Jersey's AFDC program were it not for the application of Section 615. The defendants are the state officials responsible for administering the welfare program in New Jersey.

Plaintiffs' cause of action is based on 42 U.S.C. § 1983.[3] They seek injunctive

---

1. The parties designated as Mr. and Mrs. X have withdrawn from the action, but the other named plaintiffs continue to bring this class action.

2. 45 C.F.R. § 203.1(a), 33 Fed.Reg. 11290, Aug. 8, 1969, 45 C.F.R. § 233.20(a) (3) (ii), 34 Fed.Reg. 1395. (Jan. 29, 1969)

3. 42 U.S.C. § 1983. Civil Action for Deprivation of Rights.

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

relief under that statute, and a declaratory judgment authorized in 28 U.S.C. §§ 2201, 2202. Jurisdiction is founded on 28 U.S.C. § 1343(3). The plaintiffs sought an injunction restraining the operation of a state statute on constitutional grounds that are not insubstantial, and a three-judge-court was convened pursuant to 28 U.S.C. §§ 2281, 2284. Since both cases present the same legal questions, they were consolidated without objection.

The two cases were initially argued before this Court in December, 1969. At that argument the defendants contended that we should decline to reach the merits of the controversy because of the principles of "exhaustion of administrative remedies" and "abstention". Defendants urged abstention by this Court until the New Jersey Supreme Court decided a case brought by one of the named plaintiffs in this action, contesting the validity of section 615.

On May 4, 1970, the New Jersey Supreme Court issued an opinion in that case, Bailey v. Engelman, 56 N.J. 54, 264 A.2d 442 (1970), sustaining section 615. There is, therefore, no longer a question of abstention.

Defendants, however, continue to maintain that the possible conflict between the New Jersey regulations and the federal statute should be resolved through the administrative procedures of the Department of Health, Education and Welfare.

In Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), the Supreme Court made abundantly clear, what earlier cases had already indicated, that "neither the principle of 'exhaustion of administrative remedies' nor the doctrine of 'primary jurisdiction' has any application to the situation" when a state regulation in the welfare area is challenged by recipients or prospective recipients as violating the Constitution. 397 U.S. at 406, 90 S.Ct. at 1215. Despite the dissent of the Chief Justice and Justice Black in Rosado, 397 U.S. at 430, 90 S.Ct. at 1227 and their additional dissents in Lewis v. Martin, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (filed April 20, 1970), and Wyman v. Rothstein, 398 U.S. 275, 90 S.Ct. 1582, 26 L.Ed.2d 218 (filed June 1, 1970), the majority of the Supreme Court has decided that federal courts may review state welfare regulations although HEW has not determined their validity.

Some months after we heard argument in these cases the New Jersey Welfare Department promulgated a revision of regulation 615. The new version was published in the New Jersey Register on April 9, 1970, and became effective May 1, 1970.[4] The New Jersey Supreme

---

4. The current regulation 615 reads as follows:
615. "Administrative Ceiling in ADC.
615.1 For the ADC program only, there are hereby established administratively prescribed ceilings, limiting the amount of total available adjusted income as defined in Section 615.2 for any month within which any family of specified size may be considered a "needy" family for purposes of eligibility for a money payment with respect to such month, and limiting the amount of money payment that may be made with respect to any budget deficit for that month.
a. The maximum money payment for which any family budget unit has entitlement shall be limited to the dollar amount of the difference between the applicable Administrative Ceiling amount by family budget unit size shown in Schedule X, and the amount of the family budget unit's total available adjusted income as defined in Section 615.2.
615.2 Total available adjusted income for this purpose shall be determined as follows:
a. Determine the sum of the gross earned and unearned income of all family budget unit members, excluding, however, all of the following:
1. Any income referred to in Sections 408.3 b. and c. (earnings of children);
2. Amounts coming from sources identified in 408.3 f. (Priority II—WIN), 408.4 (loans), 408.5 (Relocation adjustment payment), 408.6 (Food Stamps), 408.8 (occasional gifts), 408.9 (supplemental aid), and 408.10 (Highway Relocation Assistance); and
b. From this sum, deduct the following:
1. Mandatory payroll deductions, including correct required amount of Federal, State and City withholding taxes;

Court considered the new regulation before releasing its decision in Bailey v. Engelman. Because of the revision of 615 and the New Jersey decision, we heard additional argument on May 20, 1970.

■ Plaintiffs raise both constitutional and statutory grounds in support of their position. Although jurisdiction of a three-judge-court depends on the assertion of a constitutional issue, once convened such court has jurisdiction over non-constitutional claims and is obligated to adjudicate such claims in preference to the constitutional one. Rosado v. Wyman, 397 U.S. at 402, 90 S.Ct. 1207; Dandridge v. Williams, 397 U.S. 471, 475–476, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); Wyman v. Rothstein, 398 U.S. 275, 90 S.Ct. 1582, 26 L.Ed.2d 218; King v. Smith, 392 U.S. 309, 312 n. 3, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). Accordingly, we shall consider plaintiffs' statutory claims.

Section 615 of the New Jersey Categorical Assistance Budget Manual is comprised of a set of regulations having state-wide effect. These regulations provide, in essence, that when the "available adjusted income" of a family exceeds a set amount, called an "administrative ceiling", members of the family are ineligible for public assistance under the AFDC program. If the family's available adjusted income is less than the administrative ceiling, assistance is limited to the difference between available adjusted income and the administrative ceiling.

Available adjusted income is calculated by deducting from "gross earned and unearned income of all family budget unit members" certain specific excluded income, mandatory payroll deductions, cost of child care, support paid under court order, $50 for expenses of employment, as provided in Section 410 of the

Social Security; unemployment compensation taxes; and garnishments, according to State law,

2. Authorized costs of child care being paid by the client;

3. Mandatory court orders of support for dependents living out of the home, if actually being paid;

4. Expenses of employment, as recognized in Section 410, for each employed family budget unit member;

5. If applicable, for a spouse newly added to the family budget unit, the actual amount of payments being made toward prior indebtedness as specified in Section 309.4;

6. If applicable, for any adult who is a member of the family budget unit because he occupies a spousal relationship without proof or claim of ceremonial marriage, allowance for monthly medical costs as specified in Section 406, and/or the actual amount of payments being made toward prior indebtedness as specified in Section 309.4.

c. The remainder is the total available adjusted income to be used in application of the Monthly Administrative Ceiling amounts in Schedule X.

615.3 When the applicable Administrative Ceiling in Schedule X exceeds the family budget unit's total available adjusted income, eligibility for money payment is the amount of such difference, or the amount of the budget deficit, whichever is less, adjusted to the nearest dollar.

615.4 When the total available adjusted income (as herein defined) of the family budget unit exceeds the applicable amount in Schedule X, the family is ineligible for a money payment.

615.5 Schedule X—Administrative Ceiling in ADC

The limitation on eligibility for money payment prescribed in Sections 615.3 and 615.4 shall not be interpreted to preclude direct payments to vendors or other forms of restricted payments for designated purposes when, in the judgment of the County Welfare Board, any such payment is essential for physical health and safety, and is authorized by the Board to be granted on a non-recurring basis, for any one or more of the special circumstance requirements authorized in Sections 308.2, 308.3, 308.4, 308.6, 308.10, 308.11, 308.14.

| ADC Family Budget Unit Size | Monthly Administrative Ceiling |
|---|---|
| 2 | $320 |
| 3 | 405 |
| 4 | 470 |
| 5 | 540 |
| 6 | 620 |

For Family Budget Units of 7 or more— add $50 to the Monthly Administrative Ceiling for each additional child.

Budget Manual, and other enumerated items.

The concept or phrase "available adjusted income" was added to section 615 for the first time in the April revision. Under the previous section 615 the administrative ceiling was applied to a family unit's "gross income", less deductions for child care and court-ordered support for children outside the home. By using gross income the regulation failed to take into consideration the amount of money actually available to a family or child. A prime example was that it did not deduct any expenses incurred in earning that income.

Although under the current section 615, the administrative ceiling varies according to the size of the "family budget unit", and "available adjusted income" excludes a specified amount for business expenses, neither the administrative ceiling nor the definition of "available adjusted income" reduce earned income by the amount of the "statutory disregards" set forth in section 402(a) (8) of the Social Security Act. Plaintiffs allege that the failure to include provisions for this deduction in determining "a 'needy' family for purposes of eligibility for money payments" contravenes the statutory command of section 402(a) (8). In addition they contend that a standardized $50 deduction for expenses of employment is inconsistent with the language of section 402(a) (7) requiring the state to take into consideration "any expenses reason-

ably attributable to the earning of any such income." [5] They also contend that section 615.5 providing for "direct vendor payments" is in "blatant violation" of section 406(b) of the Social Security Act, which defines "aid to families with dependent children" as "money payments" except where otherwise provided in section 405.[6] Counsel in the *Amos* suit also consider that the new administrative ceiling like the old one violates the federal regulation which provides that the income of a stepfather or man assuming the role of a spouse may be included in the resources of a family only if such income is actually available for its use. 45 C.F.R. § 203.1(a), 33 Fed.Reg. 11290 (1968) implementing 42 U.S.C. § 602(a) (7) and 45 C.F.R. § 233.20(a) (ii) 34 Fed.Reg. 1395.

# I

Before considering the specific contentions in this case, a brief sketch of the history and statutory scheme of the welfare program may be helpful.

The Federal Government's Aid to Families with Dependant Children (AFDC) program is one of a series of programs promulgated under the Social Security Act of 1935, 42 U.S.C. § 301–1396.[7] The AFDC program, as explained by the Supreme Court in King v. Smith, *supra*, singles out the "dependent child" for welfare assistance. A "dependent child" means a needy child who has been deprived of parental support or care by reason of the death, continued absence

5. 615.2(b) (4) excludes from gross earned and unearned income "expenses of employment as. recognized in Section 410." 410. states:

"410. Expenses of Employment
410.1 The monthly amount recognized for expenses of employment is. $50.00.
410.2 This. expense-of-employment standard is the amount which is allowed for *all* expenses of employment other than costs of child care and mandatory payroll deductions.

410.3 The monthly amount for expenses of employment is to be deducted from the earned income of each employed client or member of the family budget

unit. This amount is not to be included in the budget of needs.
410.4 The monthly amount for expenses of employment is applicable to all employed persons, whether they work full or part time and regardless of the age of the person."

6. 42 U.S.C. § 605(b); 42 U.S.C. § 605.

7. The other major programs are Old Age Assistance, 42 U.S.C. § 301 et seq., Aid to the Blind, 42 U.S.C. § 1201 et seq., and Aid to the Permanently and Totally Disabled, 42 U.S.C. § 1351 et seq. The AFDC program was originally known as "Aid to Dependent Children" (ADC) and New Jersey's program still uses this title.

from the home, or physical or mental incapacity of a parent, and who is living with any one of several listed relatives and who is age qualified. § 406(a), Social Security Act, 42 U.S.C. § 606(a). The federal government provides funds to the states that participate in the program. §§ 422, 423, Social Security Act, 42 U.S.C. §§ 622, 623.

Although each state may elect or refuse to participate in the program, New Jersey and all the other states are part of the program. Once a state elects to establish an AFDC program, the plan for the administration of the program must receive the approval of the Secretary of HEW. The Supreme Court has said that each State has "considerable latitude in allocating [its] AFDC resources, since each State is free to set its own standard of need and to determine the level of benefits by the amount of funds it devotes to the program". King v. Smith, 392 U.S. at 318–319, 88 S.Ct. at 2134. For a detailed explanation of state methods used to limit AFDC payments see Dandridge v. Williams, 397 U.S. at 490, 90 S.Ct. at 1164 (Dissenting opinion Justice Douglas).

■ The authority for such limitations on assistance payments derives from section 401 of the Social Security Act, 42 U.S.C. § 601, which sets forth the purpose of the program as "enabling each State to furnish financial assistance and rehabilitation and other services, as far as practicable under the conditions in such State, to needy dependent children and the parents or relatives with whom they are living * * * ". Despite this broad language, States must conform to the specific requirements of the Social Security Act and the regulations promulgated thereunder. Rosado v. Wyman; Dandridge v. Williams; King v. Smith. Section 402 of the Social Se-

curity Act [8] consists of twenty-three subdivisions containing statutory requirements which must appear in each state plan.

State regulations have been challenged because they contradict various statutory requirements of section 402, and it is quite clear that certain methods of defining need or limiting payment below the level of need have been disapproved. See Dandridge v. Williams, 397 U.S. at 490, 90 S.Ct. at 1164 (dissenting opinion of Justice Douglas).

In Smith v. King, the Supreme Court held that Alabama's "substitute father" rule, which denied AFDC benefits to the children of a mother who "cohabited" inside or outside her home with an able-bodied man, contravened § 402(a) (10) of the Act,[9] which says that "aid to families with dependent children shall be furnished with reasonable promptness to all eligible individuals," and was inconsistent with the definition of "dependent child" in § 406(a).[10] In Rosado v. Wyman, a New York regulation changing that state's definition of "need" was held contrary to § 402(a) (23) [11], a provision that was added to the legislation in 1968 in order to increase benefits to recipients to reflect the rise in the cost of living.

A state's latitude in determining the amount of funds it wishes to allocate to the AFDC program was upheld in Dandridge v. Williams. There the Supreme Court rejected the plaintiffs' contention that Maryland's "maximum grant regulation" setting a ceiling on the amount of assistance available to a family regardless of the number of children in the family above a specified number was inconsistent with section 402(a) (10).[12] All families, however, received some money payment under the Maryland regulation.

8. 42 U.S.C. § 602.

9. 42 U.S.C. § 602(a) (10). At the time of the *King* decision this section was numbered 42 U.S.C. § 602(a) (9).

10. 42 U.S.C. § 606(a).

11. 42 U.S.C. § 602(a) (23).

12. 42 U.S.C. § 602(a) (10). In Dandridge v. Williams, the Supreme Court also rejected plaintiff's argument that this provision violated the Equal Protection Clause of the Fourteenth Amendment.

But in Lewis v. Martin, the Supreme Court voided California's welfare regulation which mandated consideration of the income of a stepfather or a paramour who had no legal duty of support as available for the support of a child, on the ground that it conflicted with HEW regulations implementing § 402(a) (7) of the Social Security Act.[13]

## II

We turn now to the specific statutory provisions which plaintiffs contend conflict with the New Jersey regulations.

### A

Section 402(a) (7) of the Social Security Act states: "A State plan for aid and services to needy families with children must * * * (7) except as may be otherwise provided in clause (8), provide that the State agency *shall,* in determining need, *take into consideration any other income and resources* of any child or relative claiming aid to families with dependent children, or of any other individual (living in the same home as such child and relative) whose needs the State determines should be considered in determining the need of the child or relative claiming such aid, *as well as any expenses reasonably attributable to the earning of any such income."* [14]

Clause (8) provides that, "in making the determination under clause (7), the State agency *"shall* with respect to any month" *disregard* from the earned income of any individual whose needs are taken into account, "the first $30 of the total of such earned income for such month plus one-third of the remainder." [15]

▮ This "income disregard" provision of section 402(a) (7) was added to the legislation as part of the 1968 amendments.[16] It was one of a number of amendments to the Social Security Act intended to increase payments to recipients because of the rise in the cost of living,[17] and to encourage individuals who had been receiving public assistance to seek employment. The statute was also amended to provide several programs for education and training of welfare recipients and a section establishing child care designed to encourage AFDC parents to take advantage of the work

13. In Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1354, 22 L.Ed.2d 572 (1969), the Supreme Court struck down state regulations which denied welfare assistance to residents of the state who had not resided within their jurisdictions for at least one year, because such restrictions were unconstitutional.

14. Section 402(a) (7) contains the concept of the "essential person". An "essential person" is one who is not independently entitled to assistance, but who is included in the family budget unit for calculations of need. *See* Lewis v. Martin, 397 U.S. at 557, n. 8, 90 S.Ct. 1282.

15. 402(a) (8) (A) requires that a "State agency—shall with respect to any month disregard * * *"
   (ii) "in the case of earned income of a dependent child not included under clause (i), a relative receiving such aid, and any other individual (living in the same home as such relative and child) whose needs are taken into account in making such determination, *the first $30 of the total* of such earned income for such

month *plus one-third of the remainder of such income for such month* (except that the provisions of this clause (ii) shall not apply to earned income derived from participation on a project maintained under the programs established by section 632(b) (2) and (3) of this title);
   Another subsection of 402(a) (8) says that a State,
   *"may,* subject to the limitations prescribed by the Secretary, permit all or any portion of the earned or other income to be set aside for future identifiable needs of a dependent child, and (ii) may, before disregarding the amounts referred to in subparagraph (A) and clause (i) of this subparagraph, disregard not more than $5 per month of any income;" 402(a) (8) (B) (i).

16. Most cases refer to these amendments as the 1967 amendments. The amendments were introduced and discussed in 1967, but were enacted into law on January 2, 1968.

17. *See* 42 U.S.C. § 602(a) (23).

program. 42 U.S.C. § 630 et seq. 42 U.S.C. § 422.

██ Section 402(a) (8) stipulates that certain amounts of earned income *shall be* disregarded when a state, as it must in accordance with § 402(a) (7), considers the "other income and resources" of an applicant in order to determine need. This provision was intended as an incentive to welfare recipients to seek employment. It was part of a congressional effort made to ensure that an applicant not find it more advantageous to remain on welfare than to seek employment. The legislative history reveals a concern among the Congressmen that one of the stated goals of the program—"to help such parents or relatives to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care [18] "—was not being achieved.[19]

The Senate Finance Committee stated that disregarding some portion of earned income was essential to implement this objective. The Committee in its report explained: "A key element in any program for work and training for assistance recipients is an incentive for people to take employment. If all the earnings of a needy person are deducted from his assistance payment, he has no gain for his effort. Currently, there is no provision in the Social Security Act under which States may permit an employed parent or other relative under the AFDC program to retain some of his earnings. There is no doubt, in the opinion of the committee, that the number of recipients who seek and obtain employment will be greatly increased if, in conjunction with the work incentive program, there may be added to title IV some specific earnings incentives for adults to work. The Department of Health, Education and Welfare has informed the committee that research and demonstration projects have illustrated that more recipients will go to work when an incentive exists."

The report continued to state that, "the committee believes that this provision will furnish incentives for members of public assistance families to take employment and, in many cases, increase their earnings to the point where they become self-supporting." [20]

In order to ensure that the legislative intent of the provision requiring the states to disregard part of earned income would be effectuated, Congress included provisions for eliminating "the disregards" for individuals who terminate employment without good cause or refuse suitable employment. 402(a) (8) (C).[21]

Realizing the expense that this mandatory deduction would cause the states, another exception to the general "statutory disregard" was provided. Section 402(a) (8) (D) provides that a state should not take the deductions from earned income required by 402(a) (8) (A) (ii) if an individual who has not received welfare for four prior months earns, before deducting the "disregards" of (8), in excess of his needs as determined by the state.[22]

██ Section 615 contravenes the mandate of 402(a) (8). New Jersey does not deduct the "statutory disregards" from the earned income of *any* applicant for AFDC assistance. Although the stat-

---

18. 42 U.S.C. § 601.

19. Report of the Senate Finance Committee, Sen.Rep.No.744, 90th Cong.2d Sess. (1967), 2 U.S.Code Cong. & Admin.News, pp. 2981–82 (1967).

20. *Id.* at pp. 2994, 2995.

21. 42 U.S.C. § 602(a) (8) (C).

22. " * * * with respect to any month, the State agency shall not disregard any earned income (other than income referred to in subparagraph (B)) of—

*     *     *     *     *

"(D) any of such persons specified in clause (ii) of subparagraph (A) if with respect to such month the income of the persons so specified (within the meaning of clause (7)) was in excess of their need as determined by the State agency pursuant to clause (7) (without regard to clause (8)), unless, for any one of the four months preceding such month, the needs of such persons were met by the furnishing of aid under the plan".

ute does not require these deductions in the circumstances set forth in 402(a) (8) (D), New Jersey does not provide for them in *any* situation where an AF DC applicant is employed.

The Defendants contend that the New Jersey statute substantially complies with 402(a) (8) because the administrative ceilings are approximately one-third higher than need. Thus, say the defendants, the individual is in a better position if he works than if he does not work since he is actually retaining some of his earned income, and the legislative purposes of the "income disregard" section are carried out.

The legislative history reveals the general purpose of section 402(a) (8), and the language of the section is quite specific. It denominates an amount, $30, and a proportion, one-third of the individual's earned income, which must be disregarded before determining need.

If Congress were willing to allow states to devise methods of encouraging employment by developing their own formulae, the statute could have been so written. As it exists today, however, it is a particular directive mandating that states follow a specified formula. No other scheme would comply with the statute.

Only in situations which meet the exceptions of 402(a) (8) (C) and 402(a) (8) (D), can a state fail to disregard the statutory amounts. The exception in 402(a) (8) (D) was provided for precisely the reason the defendants contend New Jersey's section 615 was developed —to insure that persons whose incomes exceed the "need" standard of a state do not get assistance. New Jersey's decision to allow persons to get one third above "need", as defined by New Jersey, is not the equivalent of thirty dollars plus one third of an individual's earned income. The New Jersey formula may be more advantageous to some than the statutory formula, and less advantageous to others. Nevertheless, the statute requires adherence to the formula it sets forth. The use of the one-third formula

in the federal statute relates the amount of the "disregard" to the earning of the individual. The more he. earns the more he keeps. This is not so under the New Jersey regulation.

Rosado v. Wyman provides an analogous situation for interpreting a federal statutory requirement. The question in *Rosado* was whether New York had violated 42 U.S.C. § 602(23), the "cost of living" provision of the Social Security Act. Once the Court arrived at the meaning of the provision, the statute was strictly applied and New York's contentions of administrative convenience and efficiency were rejected.

Furthermore, the administrative ceiling in the New Jersey regulations, though in excess of need, does not provide a work incentive to each member of the family. The particular ceiling applied to a family is the same independent of the number of working persons. If one member of the family works, no other has an incentive. Under the statutory formula the incentive is directly related and proportional to the earned income of each working individual.

In contrast to New Jersey's section 615, the remainder of the regulations for New Jersey's assistance program, as set forth in the Categorical Assistance Budget Manual, properly exclude the "statutory disregards" and related expenses when calculating the amount of assistance. The Budget Manual sets a standard of "need" for different categories of persons, and then determines the "budgetable earned income" available to that family. "Budgetable earned income" is the money remaining from gross income after mandatory payroll deductions, the "statutory disregards", expenses of employment, child care, and several similar items are subtracted. New Jersey Categorical Assistance Manual, section 412.1, section 408.3a. Families whose "budgetable income" is below the applicable standard of need have a "budget deficit" and are entitled to assistance.

### B

The directive of 402(a) (7) was implemented by a regulation of HEW, originally effective July 1, 1967.[23] In its present form, effective January 29, 1969, the regulation states:

"  *  *  *  in establishing financial eligibility and the amount of the assistance payment:  *  *  *  (c) only such net income as is actually available for current use on a regular basis will be considered, and only currently available resources will be considered." 45 C.F.R. § 233.20(a) (3) (ii), 34 Fed. Reg. 1395.

After the Supreme Court decided King v. Smith, *supra,* HEW promulgated a new regulation which said that in determining eligibility for assistance a state could consider only the "child's step-parent who is ceremonially married to the child's natural or adoptive parent and is legally obligated to support the child under State laws". The regulation further states:

"  *  *  *  in the consideration of all income and resources in establishing financial eligibility and the amount of the assistance payment, only such net income as is actually available for current use on a regular basis will be considered, and the income only of the parent described in paragraph (a) [one who is lawfully obligated to support the child under state laws] of this section will be considered available for children in the household in absence of proof of actual contributions." 45 C.F.R. 203.1(b), 33 Fed.Reg. 11290 (Aug. 8, 1968).

In Lewis v. Martin, *supra,* the Supreme Court reiterated that the regulations "closely comport with" the Act, and it is inconsistent with these regulations for the state to consider the income of a stepfather with no legal duty of support in determining the resources of

AFDC applicants. In *Lewis,* as we stated previously, the Supreme Court held: *"In the absence of proof of actual contribution* [a state] may not consider the child's 'resources' to include  *  * the income of a nonadopting stepfather who is not legally obligated to support the child as a natural parent  *  *  *."* 397 U.S. at 559, 90 S.Ct. at 1286, 25 L.Ed.2d 561. (Emphasis added). *See also* Solman v. Shapiro, 300 F.Supp. 409 (D.Conn.1969) aff'd per curiam, 396 U.S. 5, 90 S.Ct. 25, 24 L.Ed.2d 5. *But see* Tartaglio v. Dept. of Institutions and Agencies, Div. of Public Welfare, 102 N.J.Super. 592, 246 A.2d 483 (App.Div. 1968), cert denied 394 U.S. 1000, 89 S.Ct. 1594, 22 L.Ed.2d 778.

Carolyn Amos was denied assistance for herself and her four children because the "available adjusted income" of her husband, who is not the father of her children, exceeded the administrative ceiling of section 615. Such application of the regulation is completely unauthorized since under New Jersey law a stepfather has no legal duty to support stepchildren. Falzo v. Falzo, 84 N.J. Super. 343, 202 A.2d 192 (App.Div. 1964); Schneider v. Schneider, 25 N.J. Misc. 180, 52 A.2d 564 (Ch.1947).

New Jersey argues that the income of a stepfather is not considered unless it is actually available. Wherever this is so, New Jersey is in conformity with the statute. Section 615, however, does not state that this is so, and the two New Jersey cases cited by the State do not support such interpretation of New Jersey's welfare regulations. In *Tartaglio, supra,* the New Jersey Superior Court considered a stepfather's income available to the children who were not his own because he considered them dependents for tax exemptions. This interpretation is inconsistent with *Lewis* where the Court required "proof of

---

23. HEW, Federal Handbook of Public Welfare Adm. Part IV, 3131.7.

"  *  *  *  the State plan must provide that only income and resources that are, *in fact,* available to an appli-

cant or recipient for current use on a regular basis will be taken into consideration in determining need and the amount of payment".

*actual* contribution" before the income of a stepparent could be considered available.

In Green v. Dept. of Institutions and Agencies, 109 N.J.Super. 462, 263 A.2d 796 (1970), the New Jersey Superior Court upheld the determination of the state welfare agency which considered the income of a stepfather and denied assistance to a child although there was no proof it was available to the child. It did so because the stepfather failed to provide certain information to the agency. The issues in that situation are not present here and we do not decide them. We do, however, conclude that wherever New Jersey uses the income of a stepfather or paramour without proof of its availability, it violates the federal statute. Lewis v. Martin, *supra*. This is true although there is no provision in the New Jersey regulation like the one in California which conclusively presumes the needs of the children are reduced by the amount of income from the man in the house.²⁴

### C

■ Plaintiffs also contend that section 615.5 conflicts with section 406(b) of the Social Security Act which mandates that "aid to families with dependent children" consist solely of "money payments". Vendor payments may not be made except where authorized for medical care under section 406(b), or unless section 405 or a federal regulation allows such payments. Section 405 is addressed to situations of mismanagement of funds and does not apply here. Insofar as section 616.6 of New Jersey's current categorical assistance manual authorizes "direct payments to vendors" without such limitations, it is therefore inconsistent with the language of the federal statute.

24. For a general discussion of the problems in the area of income attribution see Note, AFDC Income Attribution: The Man in the House and Welfare Grant Regulations, 83 Harv.L.Rev. 1370 (1970).

### D

■ Plaintiffs' final statutory argument concerns the flat $50 deduction for business expenses. They claim that this provision violates section 402(a) (7) requiring states to consider "any expenses reasonably attributable to the earning of any such income" and the HEW regulations requiring that such resources must be "actually available".²⁵ There is nothing in this record to establish that $50 is an unreasonable amount for business expense or that the plaintiffs in this action or the persons they represent have incurred monthly business expenses in excess of $50. We do not consider that it is inconsistent with the statute for a state to use a standard deduction for business expenses in the interest of efficient administration of the program, provided the allowance is adequate to cover all actual expenses.

In *Rosado,* when the Supreme Court invalidated New York's regulation recomputing need in a manner which reduced the level of benefits in violation of 402(a) (23) it also stated: "We do not, of course, hold that New York may not, consistently with the federal statutes, consolidate items [in computing need] on the basis of statistical averages". 397 U.S. at 419, 90 S.Ct. at 1221, 25 L.Ed.2d 442. If a state may use statistical averages to determine the various components of need, it may also do so to compute business expenses.

We therefore reject plaintiffs' contention on this point without precluding them from showing that the $50 deduction is unreasonable or inadequate.

Because of our decision that portions of section 615 of the New Jersey regulations, except for the $50 deduction for business expenses, are inconsistent with the federal statute we need not decide the constitutional issues raised by plaintiffs.²⁶

25. 45 C.F.R. § 233.20(a) (3) (ii) quoted in text in part B of this opinion.

26. We wish to point out that although plaintiffs' constitutional arguments were somewhat analogous to the argument made by the plaintiffs in Dandridge v.

The foregoing constitutes the Court's findings of fact and conclusions of law pursuant to Rule 52(a), Federal Rules of Civil Procedure.

Accordingly, the State is enjoined from enforcing that portion of section 615 of its regulations which we have herein found contravene the federal statute. The State is granted sixty days from the filing of this opinion to revise its regulations to conform with the federal statute as required by this opinion.

### ORDER

On this 6 day of July, plaintiffs' motions for preliminary and injunctive and declaratory relief having been briefed and argued by counsel and this court having decided that Section 616 of New Jersey's Categorical Assistance Manual violates certain provisions of the Social Security Act of 1935 in an opinion filed July 6, 1970, it is ordered and adjudged that the defendants be and are hereby enjoined from enforcing section 616 insofar as it violated the federal statute. It is further ordered that New Jersey revise the regulation to conform to the federal statute and the opinion filed in this case within sixty (60) days of the date of this order.

### ORDER

On this 6 day of July, 1970, plaintiffs' motions for injunctive and declaratory relief having been briefed and argued by counsel after a stipulation that there were no factual issues to be resolved through testimony, and this Court having decided that section 616 of New Jersey's Categorical Assistance Manual violates certain provisions of Subchapter IV of the Social Security Act of 1935, as amended, 42 U.S.C. § 601 et seq., in an opinion filed July 1970, it is ordered and adjudged that the defendants be and are hereby enjoined from enforcing section 616 insofar as it violates the fed-

eral statute. It is further ordered that New Jersey revise the regulation to conform to the federal statute and the opinion filed in this case within sixty (60) days of the date of this order.

Williams, the decision by the Supreme Court in that case is not apposite on the statutory grounds since the New Jersey regulation conflicts with portions of the Social Security Statute not relevant in *Dandridge*.