ELIJAH REDDING AND MARGIE JACKSON REDDING, HIS
  WIFE; AND HATTIE HARRIS, GEORGE MORGAN,
  GLADYS CARR, LOUISE LIPSCOMB AND ALL OTHERS
  SIMILARLY SITUATED, PLAINTIFFS, v. BURLINGTON
  COUNTY WELFARE BOARD, A BODY CORPORATE AND
  POLITIC, DEFENDANT.

Superior Court of New Jersey
Law Division

Decided April 27, 1973.

*Mr. Murray J. Klein* of the Camden Regional Legal Services, Inc. for plaintiffs.

*Mr. John B. Mathews* for defendant.

Wood, A. C., J. C. C., Temporarily Assigned. This is an action in lieu of prerogative writs instituted by plaintiffs as a class action "on behalf of themselves individually and all others similarly situated," in which plaintiffs seek to restrain the Burlington County Welfare Board (hereinafter the Board) from prosecuting certain actions against plaintiffs in the Burlington County District Court.

The facts are simple and are undisputed. Since September 1972 the Board has instituted about 100 actions in the Burlington County District Court against these plaintiffs and others, all of whom are or were recipients of welfare aid under the AFDC (Aid to Families with Dependent Children) program. In each case the Board alleges that there were payments to such recipients in various amounts in excess of amounts authorized by law, and that the recipients of such overpayments are thereby indebted to the Board in the amount of such overpayments. The complaints do not allege that such overpayments were the result of any wrongdoing on the part of the defendants named therein. Indeed, they allege nothing except the fact of overpayment, the amount thereof, and the consequent "indebtedness." However, an affidavit filed by the Board's solicitor in support of the Board's motion for summary judgment states that the Board "stands ready to prove that the overpayment resulted from a lack of knowledge on the part of the Board of the receipt of some type of income to the defendant, or the possession by the defendant of assets which, if known by the Board, would have reduced or eliminated a monthly grant of assistance to the defendant." He states that such lack of knowledge by the Board resulted from "either fraudulent, willful or negligent withholding of such information by the defendant or from mere ignorance of any requirement."

The solicitor further candidly asserts that the Board is about to file additional similar actions in the Superior Court, in cases where the alleged overpayments exceed the jurisdictional limits of the county district court.

By this class action plaintiffs here (defendants in the county district court actions), for themselves and others, seek to enjoin and restrain the Board from instituting and prosecuting these actions on the ground that they are instituted in violation of the Board's powers under both federal and state statutes; that they are in violation of plaintiffs' rights under applicable federal regulations, and that they violate plaintiffs' rights to the equal protection of the laws

under the Fourteenth Amendment to the United States Constitution. Plaintiffs seek by way of further relief: (1) the restraining of the Board from collecting or attempting to collect under any judgments heretofore entered; (2) dismissal of all actions; and (3) the refund to plaintiffs of any monies heretofore collected by means of these actions.

There being, as stated, no dispute as to the facts underlying this proceeding, defendant Board now moves for summary judgment of dismissal of the action, and plaintiffs move for summary judgment granting the relief sought. The matter is before the court on these cross-motions.

■■ Initially, plaintiffs also move that the court order that this action be maintainable as a class action pursuant to *R.* 4:32–1 *et seq.* The court is satisfied that the action meets all the requirements of *R.* 4:32–1(a). Moreover, it appears that the questions of law here raised predominate over any questions affecting only individual members, and that a class action, at this juncture, is the fairest and most efficient method of adjudication of the controversy. *R.* 4:32–1(b)(3). Indeed, that the action is maintainable as a class action is conceded by defendant. The action will therefore be so maintained.

The AFDC program is established under the authority of the Social Security Act of 1935, 42 *U. S. C. A.* §§ 601–1396. Its history and statutory scheme are lucidly and succinctly outlined in *X v. McCorkle,* 333 *F. Supp.* 1109, 1113–1115 (D. N. J. 1970). However, a brief recapitulation of the statutory scheme may be helpful here.

The AFDC program, 42 *U. S. C. A.* § 601 *et seq.,* singles out the "dependent child" for welfare assistance. A "dependent child" is a needy child who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, and who is living with any one of several listed relatives and who is age-qualified. 42 *U. S. C. A.* § 606(a). The Federal Government provides funds to the states that

participate in the program. New Jersey, like all other states in the Union, does so participate.

Each state's plan for the administration of its program must have the approval of the Secretary of Health, Education and Welfare. Each state has considerable latitude in allocating its AFDC resources, since each is free to determine its own standards of need and determine the level of benefits by the amount of funds it devotes to the program. *King v. Smith,* 392 *U. S.* 309, 318–319, 88 *S. Ct.* 2128, 2134, 20 L. Ed. 2d 1118 (1968). The authority for limitations on and variations in assistance payments derives from 42 *U. S. C. A.* § 601, which states the purpose of the program as —

* * * enabling each State to furnish financial assistance and re-habilitation and other services * * * to needy dependent children and the parents or relatives with whom they are living to help maintain and strengthen family life and to help such parents or relatives to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection * * *.

Despite the broad language of the statute and the latitude it gives to the states to determine and set eligibility standards for recipients of financial assistance, each state must nevertheless conform to specific requirements of the Social Security Act and the regulations promulgated thereunder. State regulations attempting to set eligibility standards in violation of the federal act have repeatedly been set aside by the courts as illegal and void.

Thus, in *King v. Smith,* 392 *U. S.* 309, 88 *S. Ct.* 2128, 20 L. Ed. 2d 1118 (1968), an Alabama law, called cynically a "substitute father" law, which denied AFDC benefits to the children of a mother in whose household an able bodied man was residing, whether such man was legally obligated to support the children or not, was held to contravene the act and to be invalid. The court held that the Alabama law violated the federally imposed duty to extend aid with reasonable promptness to all eligible individuals.

In *Rosado v. Wyman,* 397 *U. S.* 397, 90 *S. Ct.* 1207, 25 L. Ed. 2d 442 (1970), a New York regulation changing that state's definition of "need" was struck down as violating a 1968 amendment to the Social Security Act enacted to increase benefits to recipients (42 *U. S. C. A.* § 602(a)(23)).

In *Woolfolk v. Brown,* 456 *F.* 2d 652 (4 Cir. 1972), the court struck down a Virginia "work rule" which purported to deny benefits to the families of persons who "refused suitable employment," holding that 1967 amendments to the act, called the "Work Incentive Program," preempted work rules for those in the AFDC category and that this Virginia rule was contrary to the federal standard.

And in *X v. McCorkle, supra,* a New Jersey regulation which failed to provide for deduction of statutory "income disregards" in determination of eligibility, 42 *U. S. C. A.* § 602(a)(7), was invalid, and enjoined the State from enforcing that section of its regulations.

Similarly, regulations denying benefits to needy college students, and to families whose breadwinner was absent in the armed services, have been held to violate the act. *Townsend v. Swank,* 404 *U. S.* 282, 92 *S. Ct.* 502, 30 L. Ed. 2d 448 (1971); *Carleson v. Remillard,* 406 *U. S.* 598, 92 *S. Ct.* 1932, 32 L. Ed. 2d 352 (1972).

The AFDC program is implemented in this State by *N. J. S. A.* 44:10–1 *et seq.* The statutes conform to federal standards. The Commissioner of Institutions and Agencies is

Authorized, directed and empowered * * * to do or cause to be done all * * * acts and things necessary to secure for the State of New Jersey the maximum federal financial participation that is available with respect to [the AFDC program]. [*N. J. S. A.* 44:10–3]

Among the prime objects of the program are the maintenance and strengthening of family life, and the helping of parents or relatives to attain the maximum self-support and personal independence consistent with the maintenance

of continuing parental care and protection. *N. J. S. A.* 44:10–1(a)(2) and (3).

To these ends the act provides for financial assistance to dependent children and the parents or relatives with whom they are living, in accordance with need and under limitations as determined and prescribed by appropriate regulations promulgated by the Commissioner.

The grants of assistance as provided are outright grants. No provision is made in the Social Security Act or in the state statute for any reimbursement by the grantee, or creating any obligation to reimburse the State or the county welfare boards who administer the program for any of the funds so granted. In this the AFDC program differs from several other assistance programs established by the State. Thus, the statutes providing for old age, assistance specifically provide for the establishment of a debtor-creditor relationship between the grantee and the county welfare board by agreement of the former to reimburse the latter, and for the creation of a lien on the property of the beneficiary for that purpose. *N. J. S. A.* 44:7–14. Similarly the Aid to Families of the Working Poor program contains a specific proviso that assistance granted shall "constitute a debt owed to the State of New Jersey which shall be recoverable by the State of New Jersey or its agents." *N. J. S. A.* 44:13–9.

No such reimbursement obligation is created by the AFDC program. On the contrary, such obligation is specifically omitted therefrom. *N. J. S. A.* 44:10–2 provides that the program shall be administered in accordance with and governed by requirements, limitations and procedures established by *Chapter 7* of *Title 44, except, inter alia, N. J. S. A.* 44:7–14. The state statute does contain a provision for reimbursement under certain limited conditions, *e. g.,* where there is pending payment to the child or his parents from a claim owned by them, or where the child dies before his 21st birthday leaving an estate. No such unique situation is applicable here.

The question thus arises whether "overpayments," viz., payments in excess of proper allotments, may be recovered, and if so by what means. Neither the state statutes nor the federal enabling legislation or the regulations promulgated thereunder contain any provision for such recovery by the State or its agencies by civil action.

In the federal statutory and regulatory scheme the sole provision for recovery of overpayments is set forth in the regulation promulgated by the Department of Health, Education and Welfare, 45 *C. F. R.*, § 233.20 (a) (3) (ii) (d), as follows:

> Current payments of assistance will not be reduced because of prior overpayments unless the recipient has income or resources currently available in amounts by which the agency proposes to reduce payment, except that where there is evidence which clearly establishes that a recipient willfully withheld information about his income or resources, such income or resources may be considered in the determination of need to reduce the amount of the assistance payments in current or future periods.

As for the state statutes, *N. J. S. A.* 44:7–32, which is incorporated in the AFDC statutes by reference (*cf. N. J. S. A.* 44:10–2), provides:

> Any person who, by means of a false statement, or false representation, or by impersonation, or other fraudulent device, obtains or attempts to obtain, or aids or abets, any person to obtain funds under this chapter to which he is not entitled, or a larger amount of assistance than that to which he is justly entitled, or payment of any forfeited installment grant; or knowingly aids or abets in buying, or in any way disposing of, the property of an applicant without the consent of the county welfare board, shall be guilty of a misdemeanor and punished accordingly. If such person be himself an applicant or recipient of old age assistance, his application may be denied or his grant withdrawn, and future grants denied at the discretion of the board.

The policy of the AFDC legislation, as above stated, is assistance to families with dependent children to aid them in gaining and retaining economic independence. The right of the welfare board to seek recovery of overpayments by civil

action must be found in the legislation from which it derives its authority. The AFDC legislation gives no such authority, and it must be concluded that in the absence thereof such authority does not exist. The sole means provided by statute or regulation for the recovery of overpayments are the imposition of criminal sanctions, or reduction or denial of future payments, where overpayments are shown to be the result of fraud or wrongdoing on the part of the recipient.

In the instant case the civil actions do not allege any fraud or wrongdoing. Each action simply alleges an overpayment and demands its recovery. A general power in the welfare board to seek by civil action the recovery of overpayments without regard to the reasons for or causes of such overpayments might well be subversive of the objective of the program. Quite conceivably the recovery of a judgment against a person newly emancipated from the aid program might result in the loss of a job or in other ways again destroy his financial independence and put him back on the welfare rolls.

Moreover, it would seem that such actions as these must necessarily be exceedingly difficult, if not impossible, to defend. All the records on which the claim is based must be in the hands of the welfare board. Families receiving assistance do not customarily keep accurate records. They are, of course, poor and in most instances ignorant of the fine points of the law. No doubt there are many cases of overpayments made simply because of a lack of understanding of the recipients of questions asked them or information required of them by the welfare board bearing on their eligibility for assistance and the allowable amounts thereof. Such persons are hardly in a position to defend themselves effectively against such actions as these. Furthermore, these actions impliedly assert a right of recovery even if the overpayment was occasioned entirely by the fault or error of the Board itself and the recipient was guilty of no wrong or

mistake whatever. For such a right of recovery to exist it must be specifically authorized by statute. It has not been so authorized.

This court concludes that in instituting these actions the Board has acted in violation of its authority under both the Social Security Act and the state act implementing its provisions.

In view of this conclusion it is not necessary to deal with the constitutional and procedural issues raised by plaintiffs. However, it is perhaps appropriate to note that, in the event that the Board seeks to invoke proper statutory sanctions against any of the plaintiffs or members of the class, it would appear that such persons must be accorded the opportunity of an administrative hearing, as provided by the federal regulations 45 C. F. R., § 205.10(a). Indeed, the court is informed that the affording of such hearing is in accordance with state regulation and welfare board policy.

For the foregoing reasons the pending actions are declared to be illegal and void and the Board is declared to be without power to institute civil actions for the recovery of alleged overpayments. The following relief is granted:

(a) The Board is directed to enter voluntary dismissals of all pending actions for recovery of overpayments.

(b) The Board is permanently enjoined and restrained from instituting any civil actions against plaintiffs or members of the class they represent for the recovery of alleged overpayments of AFDC benefits, except as specifically authorized by statute.

(c) The Board is permanently enjoined and restrained from seeking payments, voluntary or otherwise, from plaintiffs or members of the class they represent, in order to recoup any alleged overpayments, except as specifically authorized by statute.

Plaintiffs also seek judgment directing the Board to return monies previously collected by it for alleged overpayments. This must be denied. There is no evidence before

the court as to what monies, if any, have been collected, or from whom, or the amounts thereof. Such recovery should be sought by plaintiffs or members of the class in individual actions if any such payments have in fact been made.

The motion of defendant Board for summary judgment of dismissal of this action is denied.