YVONNE BAILEY, CLAIMANT-APPELLANT, v. IRVING EN-
GELMAN, AS DIRECTOR OF PUBLIC WELFARE, AND
STELLA CASSI, AS DIRECTOR OF BERGEN COUNTY
WELFARE, RESPONDENTS.

Argued November 18, 1969 and December 1, 1969—
Decided May 4, 1970.

Mr. *Ronald B. Atlas,* of Bergen County Legal Services Assurance Corp., argued the cause for appellant.

Mr. *Eugene T. Urbaniak,* Deputy Attorney General, argued the cause for respondent Engelman (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

WEINTRAUB, C. J. This matter involves the program for Aid to Families with Dependent Children (AFDC). Plaintiff, who had received such assistance for herself and her child, contends the State regulations violate the equal protection clause of the Fourteenth Amendment to the Federal Constitution and the implied guarantee of equality which reposes in *Art.* I, ¶ 1, of our State Constitution, *Washington National Ins. Co. v. Board of Review,* 1 *N. J.* 545, 554 (1949). She contends also that the regulations violate the Federal and State statutes under which the assistance program was erected. The New Jersey Division of Public Welfare having decided the challenge against her,[1] plaintiff sought review in the Appellate Division, and we certified the matter before argument there.

---

[1] Assistance to plaintiff had in fact terminated. At the argument before us it appeared that a mathematical error might have been made in reaching that determination. Thereafter we were advised that this was so and that payments were resumed. Plaintiff accepts the new computation as correct under the existing regulations, but presses her complaint that the regulations deny equal treatment.

The AFDC program is one of four categorical assistance programs established by the Social Security Act of 1935. 42 *U. S. C.* §§ 301–1394. Our State elected to participate in the AFDC program, *N. J. S. A.* 44:10–1 *et seq.*, and adopted a plan which received the approval of the Secretary of Health, Education and Welfare, as required by the Social Security Act, 42 *U. S. C.* §§ 601–604. Such approval is prerequisite to eligibility for federal funds to help finance the programs. The history of the federal legislation is recounted in *King v. Smith,* 392 *U. S.* 309, 88 *S. Ct.* 2128, 20 *L. Ed.* 2d 1118 (1968).

Our State regulations, contained in the Categorical Assistance Budget Manual, fix income ceilings for determining eligibility for aid, which ceilings vary with the number of members of the family unit. *Sec.* 615. The assistance payable is limited to the difference between the applicable ceiling and the "total available adjusted income" of the family unit as determined under the regulations. *Sec.* 615.1a. *Section 615.5* of the regulations read as follows at the time the immediate controversy arose:[2]

| ADC Family Budget Unit Size | Monthly Administrative Ceiling |
|---|---|
| 2 | $300 |
| 3 | 390 |
| 4 | 470 |
| 5 | 540 |
| 6 | 620 |
| 7 | 670 |

For Family Budget Units of 7 or more add $50 to the Monthly Administrative Ceiling for each additional child.

---

[2]The limits have since been increased as follows (now § 615.6):

| ADC Family Budget Unit Size | Monthly Administrative Ceiling |
|---|---|
| 2 | $320 |
| 3 | 405 |
| 4 | 470 |
| 5 | 540 |
| 6 | 620 |

For Family Budget Units of 7 or more—add $50 to the Monthly Administrative Ceiling for each additional child.

Thus the regulation deals uniformly with all families on the basis of the size of the family unit. Appellant objects to such uniform treatment precisely because it is uniform. She says that individual needs are not identical, and hence, unless the budget need of each family unit is determined upon an individualized inquiry, the treatment of the recipients of aid is disparate and unequal. Although plaintiff contends the regulation in this respect departs from the policy of Federal and State statutes, we find no provision in either law which mandates the course she urges. The question, then, is whether the constitutional concept of equal protection makes that demand.

Appellant correctly concedes the State is not required to meet the total needs of a recipient of aid. Indeed the State need not participate in the federally assisted program at all, and if it does, "There is no question that States have considerable latitude in allocating their AFDC resources, since each State is free to set its own standard of need and to determine the level of benefits by the amount of funds it devotes to the program." *King v. Smith, supra,* 392 *U. S.* 309, 318–319, 88 *S. Ct.* 2128, 20 *L. Ed.* 2d 1118, 1126; and to the same effect, see *Rosado v. Wyman,* 397 *U. S.* 397, 90 *S. Ct.* 1207, 25 *L. Ed.* 2d 442 (April 6, 1970).[3] Rather, as we

---

[3]There the Court said in the same vein, 90 *S. Ct.* p. 1216:

There are two basic factors that enter into the determination of what AFDC benefits will be paid. First, it is necessary to establish a "standard of need," a yardstick for measuring who is eligible for public assistance. Second, it must be decided how much assistance will be given, that is, what "level of benefits" will be paid. On both scores Congress has always left to the States a great deal of discretion. *King v. Smith,* 392 *U. S.,* at 318, 88 *S. Ct.* at 2133. Thus, some States include in their "standard of need" items which others do not take into account. Diversity also exists with respect to the level of benefits in fact paid. Some States impose so-called dollar maximums on the amount of public assistance payable to any one individual or family. Such maximums establish the upper limit irrespective of how far short the limitation may fall of the theoretical standard of need. Other States curtail the payments of benefits by a system of "ratable reductions" whereby all recipients will receive a fixed percentage of the standard of need.

have said, appellant argues that, whatever the level of assistance the State may choose to provide, the State must ration that assistance on the basis of each family's own circumstances, and hence may not make a generalized estimate of the needs of families and dispense aid upon that single basis.

There can be no doubt that the regulation seeks to achieve equality of treatment. It seeks that end by determining the dollar amount of a basic budget, leaving it to those assisted to bring their individual situations within that budget. The reason for that approach is carefully stated in § 102 of the Categorical Assistance Budget Manual in these words:

For purposes of the regulations within this Manual, the concept of a minimum adequate level of living is a money amount which is sufficient to finance the purchase of those goods and services which are essential for physical health and safety. For this purpose it is the continuing basic needs which are most pertinent. This standard also recognizes and includes provision for certain immediate conventional needs which are essential for living in an urban society. This standard recognizes that the minimum physical and conventional needs vary by family composition and size, but also recognizes that it is neither possible nor equitable nor administratively feasible to attempt to construct standards of such infinite variability as to correspond with the infinite variety of "felt needs" and desires of all individuals within each family. It is the purpose of this standard of living to provide a financial basis of eligibility that can be applied equitably and used uniformly in the execution of the public welfare laws and regulations. It is neither the intent nor the purpose of the Manual that the public assistance standard of living which it establishes is convertible to an item-by-item tabulation of specific commodities presumed to be uniformly essential to all individuals and all families. It is a standard or money amount which is designed to conform both to the minimum essential physical health and safety and conventional needs of the population to be served and to the social conscience of the community.

The practical problems which would be inevitable under appellant's approach would seem prohibitive in terms of time and cost.[4] Nor is there a dependable promise that so per-

---

[4]We gather from *Rosado v. Wyman, supra,* 397 *U. S.* at 417, 90 *S. Ct.* at 1220, 25 *L. Ed.* 2d at 458, fn. 20, that "the HEW program * * * invites the States to adopt administrative programs that curtail unnecessarily burdensome calculations and paperwork."

sonalized an approach would, overall, come closer to the ideal of equal treatment of the needy. In any event, the regulation proceeds upon a concept of equal treatment which cannot be called irrational.

Appellant cites *Collins v. State Board of Social Welfare,* 248 *Iowa* 369, 81 *N. W.* 2d 4 (Sup. Ct. 1957); *Williams v. Dandridge,* 297 F. Supp. 450 (D. Md. 1969); *Dews v. Henry,* 297 *F. Supp.* 587 (D. Ariz. 1969); and *Westberry v. Fisher,* 297 *F. Supp.* 1109 (S. D. Me. 1969). Those cases do not touch the present issue. In all of them the budget was graduated on the basis of family size but subject to a maximum sum no matter how numerous the family members. Hence the argument could be made that the children in excess of the minimum number entitling the family to the maximum budget figure were denied aid which would have been granted them if they lived elsewhere than with the family unit. In our case, there is no such maximum; the budget reflects all members without limit as to their number. Thus those cases did not involve our situation. At any rate, after the argument before us the United States Supreme Court overruled the concept of those cases and held that such inflexible maximums are consistent with the equal protection clause and with the federal statute as well. *Dandridge v. Williams,* 397 U. S. 471, 90 *S. Ct.* 1153, 25 *L. Ed.* 2d 491 (April 6, 1970).

The regulation is accordingly sustained. No costs.

*For affirmance* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal* — NONE.