VIOLET KELLER, et al., individually and on behalf of all persons similarly situated, Plaintiffs-Appellees, *v.* MYRON THOMPSON, in his capacity as Director, Department of Social Services and Housing, STATE OF HAWAII; DEPARTMENT OF SOCIAL SERVICES AND HOUSING, STATE OF HAWAII, Defendants-Appellants

NO. 5690

FEBRUARY 28, 1975

RICHARDSON, C.J., KOBAYASHI, OGATA AND MENOR, JJ., AND RETIRED JUSTICE LEWIS ASSIGNED BY REASON OF VACANCY

184

OPINION OF THE COURT BY OGATA, J.

This appeal is concerned with the validity of the rules and regulations of the Department of Social Services and Housing (hereinafter "DSS&H") announced by it in January 1974, in its Manual Memo No. 250, distributed to its public welfare staff (income maintenance), that effective as of February 1, 1974, it would implement a full flat grant system of payment of benefits to eligible general assistance single persons and childless couples. Previous to such proposed effective date, eligible general assistance single persons, as well as childless couples, had received their monthly benefit payments on a partial flat grant basis, that is, each had been allotted an amount for non-shelter needs which was determined by averaging the costs for such needs on statewide basis as determined by DSS&H and in addition thereto a separate payment for shelter cost, if any.

Under the full flat grant plan announced by DSS&H, an eligible single person or a childless couple would be entitled to receive maximum monthly standardized benefit which var-

ied depending upon their living arrangements. A single general assistance recipient would be allowed a monthly sum of $77.00, if he has no shelter expense; he would receive a monthly sum of $130.00, if he shares rental or lives in public housing accommodations; or his monthly allowance would be $166.00, if he rents private housing accommodations. Likewise an eligible general assistance couple without children would be entitled to receive a monthly sum of $135.00, if they have no shelter expense; they would be allowed a monthly sum of $195.00, if they share rental or live in public housing accommodations; or their monthly allowance would be $249.00,[1] if they rent private housing accommodations.[2]

On February 5, 1974, the plaintiffs filed a complaint in behalf of themselves and others similarly situated, against defendants, Myron Thompson, in his capacity as Director of DSS&H,[3] and DSS&H, seeking a declaratory judgment that the flat grant plan sought to be implemented by defendants was null and void, and for an injunction to enjoin defendants from reducing the general assistance benefits payable to plaintiffs and others similarly situated below such sum which would be necessary to provide for minimum needs compatible with the maintenance of decency and health. This complaint was amended by plaintiffs on February 26, 1974.

On April 11, 1974, after the trial court had denied defendants' motion to dismiss the plaintiffs' first amended complaint, plaintiffs filed under Rule 56 HRCP a motion for

[1] As shown in Manual Memo No. 250, this amount was $225.00, and the amount of the grant payable to a single person renting private housing accommodations was $150.00, for the month of February 1974. Effective March 1974, these grants were adjusted to $248.00, for a couple without children, and $165.00 for a single person. Under a subsequent emergency rule approved July 8, 1974, each of these grants was increased by an additional $1.00.

[2] The full flat grant does not supersede "special circumstance requirements" and does not include food stamps and cost of medical care which is paid directly to the provider.

[3] We take judicial notice that on September 1, 1974, Myron Thompson became a trustee under the will and of the estate of Bernice Pauahi Bishop, deceased, and under Rule 6(g) of our rules his successor, Andrew I. T. Chang, who is now Director of DSS&H, is substituted as a defendant in place of Myron Thompson.

partial summary judgment. On April 23, 1974, during the hearing on this motion in the court below, the motion was re-entitled motion for summary judgment by agreement of counsel. Upon the conclusion of the hearing on this motion, the court granted the motion for summary judgment based upon the single ground explicitly mentioned therein:

". . . that the flat grant regulation promulgated and implemented by Defendants (See Exhibit A attached to the Complaint filed herein, and later amended by Defendants' emergency regulations [sic], *see* Plaintiffs' Exhibit 6 attached to the Deposition of Edwin Tam filed herein) was not authorized or permitted by the governing state statute, H.R.S. section 346-71, *et seq.*, particularly H.R.S., section 347-73 [sic]."

An order granting summary judgment and permanent injunction was filed with the records of this case on May 17, 1974. In that order the court concluded "that the Defendants have exceeded their statutory authority in implementing a flat grant system of welfare assistance." A judgment for the plaintiffs and against defendants was filed on June 4, 1974. We reverse.

In their answer filed on April 8, 1974, in the court below by defendants they have categorically denied that plaintiffs are entitled to any relief prayed for in their first amended complaint. Defendants have further specifically denied paragraphs 24, 25, 27, 29, 32 to 34, and 36 to 39 of the first amended complaint. On March 25, 1974, the plaintiffs had further amended their first amended complaint by the addition thereto, after paragraph 27, of a new paragraph numbered 27a, which alleged that "Defendants' actions in promulgating and enforcing the regulations herein are in conflict with the requirements of law inasmuch as they are not based on any rational relationship to the minimum needs (including food, shelter, clothing, utilities and incidentals) compatible with the maintenance of decency and health and that they are unreasonable, arbitrary, and capricious." Although the allegations of this additional paragraph were not denied by the defendants, because of the nature and tenor of the defendants' answer we think this was simply inadvertent, and we

would treat the factual allegations of the additional paragraph as though denied.

Plaintiffs supported their motion for summary judgment based upon the pretrial depositions of Jack T. Wakayama, Chief of Research and Statistics Office of DSS&H, and Edwin Tam, Public Welfare Administrator of DSS&H. Plaintiffs further assert that the affidavits which were filed together with their motion for preliminary injunction on March 7, 1974, although these affidavits were not referred to in plaintiffs' motion for summary judgment, factually justifies the court in arriving at its decision to grant a summary judgment.

Preceding the hearing on the motion, defendants filed four affidavits in opposition to the motion for summary judgment. In his affidavit, Dr. Marvit, a doctor of medicine and currently an associate professor of mental health, school of public health, University of Hawaii, and also an associate clinical professor of psychiatry, school of medicine, University of Hawaii, stated that it was his opinion as an expert in the fields of public health, mental health and psychiatry "that a flat grant system encourages the poor to develop more autonomous functioning and greater self esteem; that a flat grant system is likely to leave the poor less disaffiliated from society at large hence less resentful of their life situation than a non-flat grant system." It was his further "opinion that a non-flat grant system creates a sense of hopelessness and powerlessness, and promotes unhealthy dependency."

Mr. Jack T. Wakayama's affidavit recited the development and adoption of a standard monthly assistance requirement by the DSS&H in 1950, the actual levels of payment of benefits to general assistance recipients since 1950, in relation to the prevailing minimum standards of living recognized by DSS&H, a history of flat grant, and also a comparison of the amounts based upon full flat grant bestowed upon general assistance single persons and childless couples with the amounts in the poverty guidelines for Hawaii set by the Office of Economic Opportunity — a comparison that indicates that a general assistance single person receives 1.5% more than a correlative amount in such guidelines and that general assist-

ance childless couple exceeds such guidelines by 20%. In a separate affidavit, Mr. Wakayama further stated the corresponding amounts that must be earned by a full-time working person to equal the flat grant benefits allocated to a single person and a childless couple. In his affidavit, defendant Chang (then a deputy director of DSS&H) stated that he believed "that all general assistance singles and all general assistance childless couples . . . can live in a manner compatible with the maintenance of decency and health on the amount of aid presently provided for in the flat grant adopted by" DSS&H. Such an opinion by defendant Chang was based upon his professional and educational expertise.

Plaintiffs have contended in the court below and before us that under HRS Chapter 346, DSS&H is clearly without authority to implement a flat grant system of payments to eligible general assistance recipients. They base this conclusion and contend that the flat grant regulations are ultra vires for two reasons: (1) that the statutory scheme provides both a ceiling and a floor as to these benefits; and (2) that flat grant necessarily requires a gross averaging of needs and therefore some recipients would receive monthly grants in excess of the minimum proscribed in HRS § 346-73.

On the other hand, defendants contended before the court below and before us that defendants' regulations implementing the flat grant are consistent with HRS §§ 346-71 to 346-73.

DSS&H is authorized under HRS § 346-14(1) to "Administer, establish programs and standards, and promulgate rules as deemed necessary for all public assistance, including payments for medical care". Further, it is also provided in HRS § 346-1 that " 'Public assistance' means money payments to or for the benefit of persons whom the department has determined to be without sufficient means of support to maintain a minimum standard of living compatible with decency and health . . ."

Part III of HRS Chapter 346, relating to general assistance is comprised of three sections, HRS §§ 346-71 to 346-73. The section that requires our construction is HRS § 346-73. This section reads as follows:

"§346-73 *Amount of grants*. Upon receipt of an appli-

cation for general assistance, the department of social services shall investigate and prepare a complete record of the circumstances of the applicant and his dependents, if any. The amount or value of the assistance shall not exceed the minimum as in the judgment of the department will provide for the minimum needs (including food, shelter, clothing, utilities, and incidentals) compatible with the maintenance of decency and health, including payments to or on behalf of such persons for medical care, of such applicant and his dependents.''

Neither *Clark v. New Hampshire Department of Health and Welfare,* ___ N.H. ___, 315 A.2d 187 (1974), nor *Villa v. Arrizabalaga,* 466 P.2d 663 (Nev. Sup. Ct. 1970), cited by plaintiffs, sheds any light which would aid us in the determination of the solution to our problem, as each of these cases were concerned with the interpretation of their own particular statutes. Since both the New Hampshire and Nevada statutes contain language which explicitly requires individualized public assistance grants, it is evident that the language of our statute differs substantially from the language of those in the two jurisdictions cited. *Clark, supra,* and *Villa, supra,* are therefore entirely irrelevant. We believe that our primary duty is to ascertain the intention of the legislature and to implement that intention to the fullest degree. Such a proposition is so elementary that it needs no citation of authorities.

Historically, HRS Chapter 346, including the above quoted HRS § 346-73, and its two previous sections, had its genesis in 1937, when the legislature enacted Act 242, S.L.H. 1937, and established a territorial board of public welfare and county public welfare commissions. The original precursor to HRS § 346-73 was section 47 of Act 242, S.L.H. 1937, which read as follows: "Upon receipt of an application for general assistance the commission shall investigate and prepare a complete record of the circumstances of the applicant and his dependents, if any. If assistance is granted, the commission shall fix the amount or value of such assistance in money, food, shelter, or other necessities. The amount or value of such assistance shall not exceed such minimum as in the

judgment of the commission will provide a minimum subsistence for the individual and dependents concerned.''

The second sentence of section 47 of Act 242, S.L.H. 1937, vested in the commission a broad general authority to ''fix the amount or value of such assistance'' limited only by the next following sentence that the ''amount or value of such assistance shall not exceed such minimum as in the judgment of the commission will provide a minimum subsistence'' to a recipient and his dependents. While HRS § 346-73 does not contain the equivalent sentence set forth in section 47 of Act 242, S.L.H. 1937, and this sentence was omitted from HRS § 346-73, by Act 296, S.L.H. 1941, the effect of this amendment is insignificant because under another section, HRS § 346-14(1), DSS&H is fully empowered and authorized to ''establish programs and standards, and promulgate rules as deemed necessary for all public assistance.'' HRS § 346-73 was further amended by Act 128, S.L.H. 1961, which inserted an additional requirement that DSS&H also pay the medical expenses incurred by a recipient or his dependents.

HRS § 346-73 has now been our statutory law since 1937, and it has been construed and implemented by DSS&H, the agency charged by law with the responsibility to administer the state's general assistance program for over a quarter of a century. Since 1950, DSS&H has been determining a substantial part of the grant to general assistance recipients on standardized statewide community costs for items such as food, clothing, transportation, laundry, educational costs and personal expenses. In 1968, DSS&H expanded its modified flat grant to include utilities as an ingredient in its standardized statewide community costs.[4] A uniform practical construction given to a statute for a considerable period of time by an executive department of a government which is charged to carry out such a statute, although not controlling, is entitled to much weight in case of doubt as to the meaning of the statute. *Territory v. Honolulu Rapid Transit & Land Co.*, 23 Haw. 387 (1916). Additionally, we think that appropriation

---

[4] This practice of DSS&H has been unchallenged. However, plaintiffs do not concede the legality of flat grant for non-shelter items.

acts considered and enacted by the legislature may in appropriate circumstances express legislative intent,[5] and we regard that the 1973 session of the legislature appropriated funds to DSS&H for welfare assistance with full knowledge that these funds were to be utilized for flat grant assistance.[6]

HRS § 346-73 does not spell out any precise formula or technique for computing the amount of general assistance, and the other sections of HRS chapter 346 are barren on this subject. Further, in HRS § 346-73 food, shelter, clothing, utilities and incidentals are grouped within a parenthesis referring to minimum needs. No special distinction is made as to any of these items. We think that the language of the statute is clearly susceptible to the same kind of treatment for shelter as well as for food, clothing, utilities and incidentals, and a flat grant for all would not violate the statute on its face.

We hold that there is nothing in HRS chapter 346, especially in the terminology of HRS § 346-73, which reasonably can be read to preclude the implementation of flat grant. We think that the first sentence of HRS § 346-73 merely requires the DSS&H to investigate and prepare a complete record of the circumstances of the applicant and his dependents. Upon the receipt of an application by the DSS&H an investigation is necessary to determine whether or not the applicant is eligible for general assistance based upon the minimum needs

---

[5] Appropriation acts may confer authority on executive department if the legislature clearly expresses its knowledge and approval of the actions of the executive agency or if the appropriation is made repeatedly in the light of long-standing executive practice. Fleming v. Mohawk Co., 331 U.S. 111 (1947); Brooks v. Dewar, 313 U.S. 354 (1941); Isbrandtsen-Moller Co. v. United States, 300 U.S. 139 (1937); United States v. Bowling, 256 U.S. 484 (1921); Wells v. Nickles, 104 U.S. 444 (1881).

[6] House Standing Committee Report No. 732 (1973) at pages 8-9 reads:

". . . Your Committee recognizes that immediate imposition of the full flat grant plan may cause hardship to some recipients. Therefore, it is directing the department to implement, initially, a partial flat grant plan which excludes assistance for rentals and to defer until January, 1974 the implementation of the complete flat grant plan."

Conference Committee Report No. 8 (1973) at page 15 states:

"Even if the welfare problem is partially resolved through the implementation of an equitable flat grant system, the lack of low-income rental housing will continue to be acute, and the demand for adequate housing for eligible welfare recipients will escalate housing costs . . ."

established by the DSS&H and the financial resources, if any, of the applicant. The amount of such assistance, however, is determined under the rules, regulations and standards established by DSS&H for general assistance recipients under HRS § 346-14(1). Of course the grant of general assistance is limited by HRS § 346-73 to such minimum as in the judgment of the DSS&H will provide for the minimum needs of the recipient. Nowhere in that section does it require the DSS&H to determine the amount of general assistance grant upon the basis of individualized needs of an applicant or eligible recipient.

We further hold that under HRS § 346-73 the DSS&H is authorized and required to exercise a judgment in relation to the maximum amount or value of the assistance permitted. That part of the statute provides for a ceiling without a floor. The only floor impliedly discernible in that section is one which the law itself will in a proper setting invoke: that "the judgment of the department [as to the minimum which] will provide for the minimum needs" be one that is not manifestly arbitrary or capricious. *Foti v. Immigration Service,* 375 U.S. 217 (1963); *Borden Co. v. Freeman,* 256 F. Supp. 592 (1966); *Bishop v. Town of Houghton,* 69 Wash. 2d 786, 420 P.2d 368 (1966); *Jabs v. State Bd. of Personnel,* 34 Wis. 2d 245, 148 N.W.2d 853 (1967); *People ex rel Stephens v. Collins,* 35 Ill. 2d 499, 221 N.E.2d 254 (1966).

It is true that a flat grant system requires the averaging of needs of the recipients and that some of the recipients may receive greater benefits than they require to satisfy their individual needs. Plaintiffs contend that these recipients would receive monthly grants in excess of the statutory minimum rendering flat grant illegal under HRS § 346-73. However, the statute only requires that the ceiling be arrived at by proper judgment. It does not require that this ceiling preclude the possibility that some recipients may receive more than their needs on an individualized basis. In this respect, although an attorney was appointed by the court below to represent the interests of the class of general assistance recipients who were believed to favor the full flat grant plan inasmuch as they would be entitled to receive an in-

crease in their allotments, no attempt was made to join any of these recipients as a party to this action. Moreover, while there is some indication in the record that the full flat grant would increase the monthly standardized allotments for some recipients, it does not constitute proof by a preponderance of evidence that the increased amount of the grants would exceed any minimum as set forth in HRS § 346-73. In addition, the gist of the plaintiffs' complaint is that the payment level of the monthly benefits to these plaintiffs would be below their individual minimum needs compatible with the maintenance of decency and health, not that it would exceed the minimum needs. Under such record we should not determine whether the terms of the regulations under attack transgressed the statute on the theory that the grants are in excess of the minimum benefits, as contended by plaintiffs.

We conclude that the record in the instant case is utterly inadequate to support the judgment of the court below. In *State v. Zimring*, 52 Haw. 472, 475, 479 P.2d 202, 204 (1970), we quoted with approval from *Phoenix Savings and Loan Inc. v. Aetna Casualty and Surety Co.*, 381 F.2d 245 (4th Cir. 1967), as follows:

> " 'It is well settled that summary judgment should not be granted unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances. * * * Burden is upon party moving for summary judgment to demonstrate clearly that there is no genuine issue of fact, and any doubt as to the existence of such an issue is resolved against him.' "

We further stated in *State v. Zimring, supra,* that:
"This is a case of first impression on a question of vast public importance. The impact of this decision will not be limited to the case at hand but will count for the future. We do not think that the decision in such a case should depend solely on the kind of affidavit submitted . . . .

It is stated in *Kennedy v. Silas Mason Co.*, 334 U.S. 249 (1948), involving an extremely important question

affecting all cost-plus-fixed-fee war contracts, that no conclusion in such case should be rested on an indefinite factual foundation; that summary procedures present a treacherous record for deciding issues of far-flung import; and that it is part of good judicial administration to withhold decision of the ultimate questions in the case until the record presents a more solid basis of findings based on litigation or on a comprehensive statement of agreed facts.''

Indeed, this is precisely the type of case where good judicial administration requires that the determination of the validity of the regulations be withheld until all testimony is adduced after a full trial.

The flat grant system is permissible under the statute only if the amount of assistance granted is reasonably commensurate with the minimum necessary to assure recipients a standard of living compatible with decency and health.[7] Defendant Chang's affidavit stated that it was. On remand, the court should hear the evidence on this as well as other relevant factual issues. If it develops that some play in the joints is necessary to avoid arbitrary and capricious action,[8] then the department must provide regulations that will allow for reasonable additional individualized assistance where the demonstrated need of the recipient exceeds the amount provided him under the flat grant plan.

Reversed and remanded for further proceedings not inconsistent with this opinion; provided that the injunction issued by the court below will continue in effect for a period of 30 days after the filing hereof.

---

[7] As previously stated in this opinion, we must bear in mind that HRS § 346-73 leaves this matter to the judgment of DSS&H, and to invalidate such judgment it is necessary for the trial court to find DSS&H abused its discretion in regard to its determination of the minimum.

[8] This does not mean that a mere showing that the benefits allocated to a general assistance recipient would be inadequate to meet his individual particular needs would be sufficient to render the flat grant rules arbitrary and capricious. *Cf.* Rosado v. Wyman, 397 U.S. 397 (1970); New Jersey Welfare Rights Organization v. Cahill, 483 F.2d 723 (1973); Travis v. Department of Public Welfare, 2 Pa. Cmwlth 110, 277 A.2d 171, *affirmed,* 445 Pa. 622, 284 A.2d 727 (1971); Bailey v. Engelman, 56 N.J. 54, 264 A.2d 442 (1970).

*Peter J. Levinson* and *Steven Guttman,* Deputy Attorneys General *(George Pai,* Attorney General, of counsel), for defendants-appellants.

*Paul Alston, Stanley E. Levin, Michael A. Town,* Staff Attorneys, Legal Aid Society of Hawaii, for plaintiffs-appellees.