OPINION OF THE COURT
Karla Moskowitz, J.
INTRODUCTION
Plaintiffs and plaintiff-intervenors (hereinafter collectively referred to as plaintiffs) are recipients of public assistance under the Aid to Families with Dependent Children program (hereinafter AFDC). Defendant Grinker is Commissioner of the New York City Department of Social Services (hereinafter NYCDSS). Defendant Perales is Commissioner of the New York State Department of Social Services (hereinafter NYSDSS).
Plaintiffs and plaintiff-intervenors challenge defendants Grinker’s and Perales’ policy and practice of denying rent arrears grants to families with children receiving public assistance whose monthly rent exceeds their monthly shelter allowance as set forth in 18 NYCRR 352.3. Plaintiffs seek interim and permanent injunctive relief; declaratory relief; class action certification pursuant to CPLR article 9; and attorneys’ fees pursuant to 42 USC § 1988 and CPLR 909.
Specifically, plaintiffs seek a judgment declaring that 18 NYCRR 352.3 which sets forth the local agency maximum monthly shelter allowances is contrary to law and that defendant Grinker’s and defendant Perales’ policy of denying rent arrears grants to families with children whose rent exceeds the maximum shelter allowance is contrary to law.
Plaintiffs move for a permanent injunction enjoining Grinker and Perales from applying maximum rent schedules which do not enable families with children to obtain and maintain housing in New York City; from applying their policies which mandate denial of requests for rent arrears which exceed the maximum monthly shelter allowance; and *478 from refusing individual requests for rent arrears. Plaintiffs request payment of all rent arrears to date of judgment.
Defendant Grinker moves to dismiss the complaint for failure to state a cause of action. Grinker claims that it is the function of the Legislature to determine and set rent schedules for recipients of public assistance. He argues that the court lacks jurisdiction to compel the Legislature to make specific budgetary appropriations. Grinker also opposes plaintiffs’ motion for a preliminary injunction and class certification.
Defendant Perales moves to dismiss the complaint for lack of subject matter jurisdiction and failure to state a cause of action. Perales contends that the extent to which the Legislature determines how to meet the needs of public assistance families with children rests entirely in its own discretion and is beyond review by the courts.
Defendant Ocean Park Company (hereinafter Ocean Park) is plaintiff Barbara Jiggets’ landlord. Ocean Park moves to dismiss plaintiffs’ claims as against it for failure to state a cause of action. Ocean Park takes no position whether defendants Grinker and Perales are acting outside the scope of any legislative mandate. However, Ocean Park does oppose Barbara Jiggets’ motion for a preliminary injunction.
MOTION TO DISMISS
Defendants Grinker and Perales move to dismiss the complaint for failure to state a cause of action pursuant to CPLR 3211. On a motion to dismiss, the court must consider whether plaintiffs’ factual allegations manifest any cause of action cognizable at law. (Foley v D’Agostino, 21 AD2d 60 [1st Dept 1964].) In a situation where the movant offers documentation other than the pleadings, supporting affidavits, for example, the court "need not assume the truthfulness of the pleaded allegations”. (Kaufman v International Business Machs. Corp., 97 AD2d 925, 926 [3d Dept 1983]; see also, Penato v George, 52 AD2d 939 [2d Dept 1976], appeal dismissed as moot 42 NY2d 908 [1977].) Submissions offered on a motion to dismiss may "establish, conclusively that plaintiff has no cause of action.” (Rovello v Orofino Realty Co., 40 NY2d 633, 636 [1976].)
Aid to Families with Dependent Children is a joint Federal and State program to provide financial assistance to needy families with dependent children. (See, Shea v Vialpando, 416 US 251, 253 [1974].) Under title IV, part A of the Social *479 Security Act, States receive Federal grants in aid to provide a partial subsidy for cash benefits provided by the States to needy families with dependent children. (42 USC §§ 601-610.) The State administers the program under a State plan which must meet the Federal requirements set forth in title IV, part A. However, States have considerable discretion in setting standards of need and in determining the amount of benefits to be paid by those who are eligible. (Shea v Vialpando, supra.) If the income and resources fall below the standard of need the family is "needy”. (45 CFR 233.20 [a] [2], [3] [ii] [A].) "The standard of need is not the amount of assistance actually paid to a needy family.” (Godboldt v Coler, Fla Cir Ct 1987, slip opn, at 6, case No. 81-2862.) The State may set a lower "standard of payment” as a maximum monthly grant. (Rosado v Wyman, 397 US 397 [1970]; Massachusetts Coalition for Homeless v Dukakis, 400 Mass 806, 511 NE2d 603 [1987].)
Aid to the needy in New York State is "not a matter of legislative grace; rather, it is specifically mandated by our Constitution.” (Tucker v Toia, 43 NY2d 1, 7 [1977]; see also, McCain v Koch, 117 AD2d 198, 215 [1st Dept 1986], revd on other grounds 70 NY2d 109 [1987].)
Section 1 of article XVII of the NY Constitution states that: "The aid, care and support of the needy are public concerns and shall be provided by the state and by such of its subdivisions, and in such manner and by such means, as the legislature may from time to time determine.” Plaintiffs allege that defendants have failed to comply with this constitutional directive and statutory and regulatory mandates which are set forth in the Social Services Law and New York City Code of Rules and Regulations.
In New York State, the standard of need is set forth in Social Services Law § 131-a (2) and 18 NYCRR 352.1. However, plaintiffs do not challenge this standard of need. Rather, they challenge the rent allowance schedule as insufficient to comply with legislative directives to care for needy families with children.
The question before the court is whether the statutory and regulatory scheme which provides aid to families with dependent children is mandatory or precatory. If the "statutory directive is mandatory, not precatory, it is within the courts’ competence to ascertain whether [the] administrative agency has satisfied the duty which has been imposed on it by the Legislature and, if it has not, to direct that the agency *480 proceed forthwith to do so.” (Klostermann v Cuomo, 61 NY2d 525, 531 [1984].) If this court finds that a mandatory directive has been established, then plaintiffs will have stated a cognizable cause of action and defendants’ motion to dismiss must be denied.
The court finds that plaintiffs’ claims relating to emergency assistance pursuant to Social Services Law § 350-j and 18 NYCRR 352.7 (g) are without merit. The statutes and regulations plaintiffs rely on provide for emergency assistance in very specific, limited circumstances.
Similarly, plaintiffs’ claims pursuant to Social Services Law § 131 are without merit. The phrasing used in the statute "insofar as funds are available for that purpose”, "as far as possible”, "whenever practicable” evidences a clear intent to grant the agency discretion improving aid pursuant to this statute.
The court agrees with defendants’ claim that plaintiffs’ allegations concerning Social Services Law § 131-a are nonjusticiable. Defendants mainly rely on the decisions in Matter of Bernstein v Toia (43 NY2d 437 [1977]), RAM v Blum (77 AD2d 278 [1st Dept 1980], appeal withdrawn 54 NY2d 834 [1981]), and Matter of Weinhandler v Blum (84 AD2d 716 [1st Dept 1981], appeal withdrawn 56 NY2d 649 [1982]). In these three actions, plaintiffs unsuccessfully challenged the regulatory and statutory scheme which set forth shelter allowances to public aid recipients (18 NYCRR 352.3; Social Services Law § 131-a).
However, plaintiffs assert that their cause of action is more specific than those addressed in Bernstein, Weinhandler and RAM (supra). Plaintiffs claim that this is a case of first impression because it deals with the expenditure of public assistance to aid needy children. None of the cases defendants rely on challenge Social Services Law § 350 which provides that "[allowances shall be adequate * * * to bring up the child properly, having regard for the physical, mental and moral well-being of such child”. (Social Services Law § 350 [1] [a].)
Plaintiffs allege that the statutory text and child welfare law in this State demonstrate that the Legislature views a home as a prerequisite to a proper upbringing. In support, plaintiffs cite Social Services Law § 350, set forth supra, and Social Services Law § 344 which provides in pertinent part that:
*481 "1. Each public welfare district shall be responsible for providing aid to dependent children * * *
"2. Aid shall be construed to include services, particularly those services which may be necessary for each child in the light of the particular home conditions and * * * other needs.” (Emphasis added.)
Plaintiffs have directed the court’s attention to decisions in other jurisdictions where the courts have directed the Legislature to comply with statutory mandates. (Massachusetts Coalition for Homeless v Dukakis, 400 Mass 806, 511 NE2d 603 [1987], supra; State ex rel. Ventrone v Birkel, 54 Ohio St 2d 461, 377 NE2d 780 [1978]; City & County of San Francisco v Superior Ct., 57 Cal App 3d 44, 128 Cal Rptr 712 [1976]; Keller v Thompson, 56 Haw 183, 532 P2d 664 [1975].)
In Massachusetts Coalition for Homeless (supra) plaintiffs sought a standard budget of assistance which was consistent with the statutory command that AFDC benefits be sufficient to enable parents to raise children in their own homes. The Supreme Court found that the Legislature had fixed the AFDC standard of need in the budget, but held that the Department of Public Welfare had a statutory duty to renew annually the adequacy of the standard budgets to ascertain whether they complied with the statutory mandate of raising a child properly in his or her own home.
The issue before the Massachusetts court was whether the Legislature could establish budgets of assistance for AFDC purposes. While the court determined that the budgets of assistance were inadequate, a different issue than the case at bar, it found that the statute which provided the standard was indeed mandatory and not precatory. General Laws of the Commonwealth of Massachusetts (ch 118, §2) provides in pertinent part that: "The department shall aid a parent in properly bringing up, in his or her own home, each dependent child, but no aid shall be granted, under this chapter, for, or on account of, any child unless the said child resides in the commonwealth * * * The aid furnished shall be sufficient to enable such parent to bring up such child or children properly in his or her own home, and shall be in an amount to be determined in accordance with budgetary standards of the department, and shall be granted from the date of application therefor.”
In State ex rel. Ventrone v Birkel (supra) the question on appeal was whether the county department of welfare had a *482 statutory duty to establish standards of public aid. The statute provides that poor relief "shall be sufficient to maintain health and decency, taking into account the requirements and the income and resources of the recipient.” (Ohio Rev Code Ann § 5113.03.) Appellants agreed that it was the duty of the Department of Public Welfare to establish minimum standards of poor relief. The court disagreed. The court found that the appellants failed to comply with the statutorily imposed mandate by setting an inadequate maximum general relief grant.
In City & County of San Francisco v Superior Ct. (supra) petitioners questioned their duty to relieve and support the indigent and dependent poor as required by statute. The court found that section 17000 of the Welfare and Institutions Code imposed on petitioners a mandatory duty. Section 17000 provides that: "Every county and every city and county shall relieve and support all incompetent, poor, indigent persons, and those incapacitated by age, disease, or accident, lawfully resident therein, when such persons' are not supported and relieved by their relatives or friends, by their own means, by state hospitals or state or private institutions.” The court determined that this section imposes a statutory duty by the use of the word "shall”. (Supra, 57 Cal App 3d, at 47, 128 Cal Rptr, at 715.) The court also found that petitioners did not comply with the mandate by failing to adopt standards of aid and care. In the absence of such standards, the court concluded that "the fixing of a level of aid so far below what is necessary to survive to persons who have not other means by which to live is arbitrary and capricious and not consistent with the objects and purposes of the law relating to public assistance programs”. (Supra, 57 Cal App 3d, at 49, 128 Cal Rptr, at 716.)
In Keller v Thompson (supra) plaintiffs challenged the implementation of a flat grant system of payment of benefits to eligible general assistance persons and childless couples. The court found that such a system was permissible under the statute but "only if the amount of assistance granted is reasonably commensurate with the minimum necessary to assure recipients a standard of living compatible with decency and health”. (Supra, 56 Haw, at 194, 532 P2d, at 672.)
In Massachusetts Coalition for Homeless, State ex rel. Ventrone and City & County of San Francisco (supra), the courts found that statutory mandates existed and the State and city agencies Were failing to comply. The courts based their find *483 ings on the use of the word "shall” in the statutes. Similarly, in this case, the statutes (Social Services Law §§ 350, 344) on which plaintiffs base their challenge use the word "shall”. There is no question that once the court finds a legislative mandate, it can direct an agency to comply with it. (Klostermann v Cuomo, 61 NY2d, supra, at 531.)
Defendants cannot ignore the problem of homelessness of families which exists in New York City by arguing that it is within their discretion to determine how money should be allocated to the needy and that any interference by the courts results in a nonjusticiable controversy. In a case involving a challenge to the standard of need used by the defendant in determining eligibility and grant amounts in its AFDC programs, the Circuit Court of Florida rejected defendant’s separation of powers argument. "To let the legislature or executive branch invoke the separation of powers doctrine every time a court’s ruling would cost the state money would not promote the legitimate concerns behind that doctrine. It would prevent [a] court from exercising its remedial powers and in fact, would violate the separation of powers by rendering the judiciary’s review of legislative and executive actions an empty formality. See generally Rose v. Palm Beach County, 361 So. 2d 135, 137 (Fla. 1978)” (Godboldt v Coler, Fla Cir Ct 1987, slip opn, at 14, case No. 81-2862, supra).
Moreover, the court takes judicial notice of the fact that the city, in its discretion, has decided to provide housing assistance to AIDS victims. According to the New York Times[1] the city is providing housing assistance to 586 people mostly in the form of rent subsidies at an amount more than twice as high as those for other welfare recipients — up to $480 a month, as opposed to the usual $193. The city also placed some AIDS patients in "single-room-occupancy hotels, in a supervised group residency home and in 12 private apartments located by the nonprofit AIDS Resource Center and subsidized by the City.” (Id.)
Statutes which direct aid to the needy must be meaningful. Defendants make an argument of form over substance. While technically they may be correct regarding an allocation of money pursuant to Social Services Law § 131-a, they cannot ignore the mandatory language of Social Services Law §§ 350 and 344. In addition, defendants have chosen not to adopt a *484 more economically feasible way to combat the problem of homelessness of families with dependent children. Instead of raising the ceiling on shelter allowances, defendants prefer to house evicted families in emergency shelters and welfare hotels at a much higher cost to the defendants as well as a higher cost to the families and to society in the long run. (Plaintiffs estimate that the cost of renting a room for a family of four at various hotels ranges from $1,430 per month to $1,825 per month. Contrast this amount with Ms. Jiggets’ rent for one year — $4,573.80.)
Government cannot hide behind its discretion in ignoring the plight of the homeless. In the words of Justice Brennan: "in the bureaucratic welfare state of the late twentieth century, it may be that what we need most acutely is the passion that understands the pulse of life beneath the official version of events. This is not to say that our vigilance against arbitrary power should be lessened, for that battle is surely not won. It is simply to acknowledge that the characteristic complaint of our time seems to be not that government provides no reasons, but that its reasons often seem remote from the human beings who must live with their consequences.”[2]
The court finds that the Legislature has singled out dependent children as a priority group to receive public aid. The statutes which address the needs of children use the word "shall” instead of discretionary terminology such as “insofar as funds are available” and "as far as possible.” (Contrast, Social Services Law §§ 350, 344, with § 131.) There is ample mandatory language set forth in Social Services Law §§350 and 344 to warrant a denial of defendants’ motion to dismiss for failure to state a cause of action. On a motion to dismiss, the court need only determine whether any cause of action can be gleaned from the complaint. (Morone v Morone, 50 NY2d 481, 484 [1980].)
The court notes that the prior decisions which found challenges to rent shelter schedules nonjusticiable did not involve statutes which direct aid to needy children. The fact that the statutes which involve children are phrased in mandatory and not precatory language indicates an intent to provide for the care of children regardless of how the Legislature chooses to spend its money.
The Legislature has an obligation to enact meaningful *485 statutes to aid the needy. This obligation, coupled with the statutory language directing aid to "children” as a specific class, warrants denial of defendants’ motion to dismiss.
CLASS ACTION CERTIFICATION
Upon commencement of this action plaintiffs also moved to certify a class consisting of "all families with children in New York City whose shelter costs exceed or will exceed defendants’ schedule of maximum shelter payments under 18 N.Y.C.R.R. sec. 352.3.”
In order to grant class action status, plaintiffs must satisfy the five prerequisites set forth in CPLR article 9:
"1. the class is so numerous that joinder of all members * * * is impracticable;
"2. there are questions of law or fact common to the class which predominate over any questions affecting only individual members;
"3. the claims or defenses of the representative parties are typical of the claims or defenses of the class;
"4. the representative parties will fairly and adequately protect the interests of the class; and
"5. a class action is superior to other available methods for the fair and efficient adjudication of the controversy.” (CPLR 901 [a].)
The proposed class meets the numerosity requirements of CPLR 901 (a) (1) which renders joinder of all members impracticable. Plaintiffs allege that "there are at least 100,000 public assistance households with children in New York City whose rent is in excess of the shelter maximum.” Clearly, the sheer numbers render joinder of all persons impractical. Moreover, the identity of these persons may vary as families go off public assistance and new families enter into the public assistance program.
The next inquiry is whether questions of law or fact exist common to the class predominate over any questions affecting only individual members. (CPLR 901 [a] [2].) Any individual questions of fact or law which may exist would not predominate over the major issues presented on behalf of the class.
CPLR 901 (a) (3) requires that the claims of the representative parties be typical of the claims of the class. Since plaintiffs’ claims arise from the same policy and practice of defendants as claims of other class members, this requirement is met. (See, Matter of Lamboy v Gross, 129 Misc 2d 564, 572.)
*486 CPLR 901 (a) (4) requires that the representative parties will fairly and adequately protect the interests of the class. Since plaintiffs’ claims are identical to those of the class, the named plaintiffs "have no special interests which might override the interests of the class (Brandon v Chefetz, 106 AD2d 162 [1st Dept 1985]).” (Supra, at 572.) The Legal Aid Society represents plaintiffs in this matter. Plaintiffs’ attorneys have the available resources and expertise to protect the interests of all class members.
The last factor to be considered is whether a class action is superior to other available methods for a fair and efficient adjudication of the controversy. (CPLR 901 [a] [5].)
The court finds that the best way to ensure that the rights and interests of the plaintiffs and proposed members of the class are protected is to grant class action certification.
Class certification will ensure that the claims presented will be judicially determined and that the rights of those persons affected but not named as individual plaintiffs will be protected. For the foregoing reasons, the request for class action certification is granted.
PRELIMINARY INJUNCTION
Plaintiffs must satisfy the well-settled three-prong test for the court to grant interim injunctive relief. They must demonstrate a likelihood of success on the merits, irreparable injury and a balance of equities in their favor. (Matter of Lamboy v Gross, supra; Kaufman v International Business Machs. Corp., 97 AD2d 925 [3d Dept 1983], affd 61 NY2d 930 [1984], supra; Tucker v Toia, 54 AD2d 322 [4th Dept 1976].)
In denying defendants’ motion to dismiss, the court has made an initial determination that plaintiffs have advanced a cognizable cause of action. Since the court finds that Social Services Law § 350 may well set forth a legislative mandate regarding the care of children, defendants are obligated to promulgate regulations and comply with minimum standards which make the statute meaningful. (See, McCain v Koch, 117 AD2d 198, supra.)
Moreover, the Legislature has especially designated children as a group for which the State is responsible.
For these reasons, and the reasons set forth above in the discussion denying defendants’ motion to dismiss, the court finds that plaintiffs have demonstrated a likelihood of success on the merits.
*487 There is little doubt that plaintiffs will suffer irreparable harm. They are threatened with immediate eviction if the. court does not grant this interim relief. The eviction proceedings have been stayed pending the determination of these motions. If preliminary relief is not granted, the stays of eviction will be lifted. Plaintiffs will be forced to leave their homes and will be faced with the dismal prospect of emergency housing since they will undoubtedly be unable to secure alternate affordable housing. In all probability, this will mean a choice between living in emergency shelters, welfare hotels, or the streets.
The equities clearly tip in plaintiffs’ favor and the court finds that irreparable harm will befall plaintiffs if interim relief is not granted.
Based on the foregoing, defendants’ motions to dismiss are denied and plaintiffs’ motions for class action certification and a preliminary injunction are granted.
It is premature to grant a permanent injunction without giving defendants an opportunity to answer the complaint and be heard.
Settle order on notice promptly which includes, inter alia, denial of motions to dismiss, 30 days for defendants to serve and file their respective answers after order signed, provisions for class certification and appropriate temporary injunctive relief. That relief shall permit plaintiffs and plaintiff-intervenors to remain in their homes and require defendants NYSDSS and NYCDSS to pay and to authorize to defendant landlords the past and current rent differentials between the shelter allowance and the current legal rent pending the outcome of this lawsuit. Stays previously issued are continued pending signing of the order.
[Portions of opinion omitted for purposes of publication.]

. An AIDS Victim’s Void: Trapped by Hospitals and Red Tape, NY Times, Sept. 22, 1987, at B7.

. Brennan, Reason, Passion, And ”The Progress of the Law”, 42 Record of Assn of Bar of City of NY, at 948 (1987).